## 11575

### CRESCENT MANUFACTURING CO. v. S. C. TAX COMMISSION

#### (124 S. E., 761)

1. Taxation—Income Tax Held Not Limited to Tax on Income Derived From Business Operations Within State.—Income tax provided for by Income Tax Act, March 13, 1922 (St. at Large, p. 896), *held* not limited to tax on income derived from business opera-

tions within State, in view of Section 1-3, and notwithstanding Section 13; the tax being a genuine income tax, and not merely a tax on property and business operations within the State, to be measured by the net income therefrom.

2. TAXATION—DOMESTIC CORPORATION'S NET INCOME DERIVED FROM BUSINESS OPERATIONS OUTSIDE OF STATE HELD SUBJECT TO INCOME TAX.—Domestic corporation's net income derived from business operations outside of State, as well as income from business operations within State, is subject to income tax, under Income Tax Act, March 13, 1922 (32 St. at Large, p. 896).

3. TAXATION—THEORY OF "INCOME TAX" STATED.—Income tax is primarily a subjective tax imposing personal liability on recipient of income, on theory that all residents, whether natural persons or domestic corporations, should contribute to public treasury in proportion to ability to pay, measured by amount of net income from all sources.

4. TAXATION—JURISDICTION TO LEVY INCOME TAX NOT DEPENDENT ON JURISDICTION OF PROPERTY OR BUSINESS OPERATIONS.—State's jurisdiction to levy income tax is not referable to and dependent on jurisdiction of property or business operations from which income is derived.

5. TAXATION—STATE CAN TAX PROPERTY OR BUSINESS, REGARDLESS OF WHETHER IT HAS JURISDICTION OF PERSONS OWNING OR OPERATING.—State has jurisdiction, for taxing purposes, of property and of business operations conducted within its borders, regardless of whether it has jurisdiction of persons who own property or operate business.

6. TAXATION—NATURE OF TAX IMPOSED BY STATUTE DETERMINED BY LEGISLATIVE INTENT.—In ascertaining the nature of tax imposed by statute, the pivotal question is that of legislative intent.

7. STATUTES—EFFECT GIVEN TO EVERY PART OF STATUTE.—Effect must be given, if possible, to every part of statute.

8. STATUTES—RULE OF STRICT CONSTRUCTION IN FAVOR OF TAXPAYER NOT APPLICABLE, IF LEGISLATIVE INTENT APPARENT FROM STATUTE AS WHOLE.—If legislative intent is apparent from an examination and consideration of the statute as a whole, the rule of strict construction in favor of taxpayer does not apply.

9. STATUTES:—CONSTRUED SO THAT ALL PARTS HARMONIZE.—A statute should be construed so that all of its parts harmonize with each other and render them consistent with its general scope and object.

10. STATUTES—AMBIGUITY OR INCONSISTENCY RESOLVED IN FAVOR OF JUST, EQUITABLE, AND BENEFICIAL OPERATION OF LAW.—Any ambiguity or inconsistency in a statute will be resolved in favor of a just, equitable, and beneficial operation of the law.

11. STATUTES—TAX LAWS NOT CONSTRUED TO REQUIRE CONTRIBUTION OF MORE THAN JUST SHARE, IN ABSENCE OF EXPRESS DECLARATION.— Tax laws should not be construed as requiring any individual or class to contribute more than his or their just share of the public burdens, in the absence of an express declaration to that effect.

12. STATUTES—CONSIDERATION IN CONSTRUCTION OF AMBIGUOUS STATUTE STATED.—Ambiguous statute will be construed according to what words meant to those who used them, in light of history of statute, contemporary history of conditions and situation of people, economic and sociological policy of State, its Constitution and laws, and all other matters of common knowledge within limits of Court's jurisdiction.

Before JOHNSON, J., Spartanburg, Spring Term, 1923. Reversed.

Action by the Crescent Manufacturing Company against South Carolina Tax Commission. From an order overruling demurrer to the complaint, defendant appeals.

*Messrs. S. M. Wolfe, Attorney General,* and *J. M. Daniel, Assistant Attorney General,* for appellant, cite: *Domestic corporation does not change citizenship by doing business in foreign State:* 26 L. Ed., 643. *Suit should be brought against collector who collected taxes:* 242 Fed., 492. *Suit authorized to collect taxes paid:* 151 Fed., 846. *Taxing power of State:* 115 S. E., 202.

*Messrs. Lanham & Lanham* and *Lyles, Daniel & Drummond,* for respondent, cite: *Income Tax Act:* 32 Stat., 896. *Suit was proper remedy:* 78 S. C., 211; 78 S. C., 447; 84 S. C., 563. *Recovery for taxes wrongfully collected:* Fed. Stat. Ann. 1921 Supp., 218. *When collection of taxes will be enjoined:* 67 L. Ed., 159. *Statutes imposing tax strictly construed against the State:* 105 S. C., 185; 25 R. C. L., 1092; 13 Ann. Cas., 631; 21 L. Ed., 728; Ann. Cas. 1914-B, 620; 26 A. & E. Enc. L., 2d Ed., 669.

NOTE: For authorities discussing the question of constitutionality of income tax, see notes in 27 L. R. A. (N. S.) 864; L. R. A. 1915B, 569.

On income as "property" within constitutional limitations on taxation, see notes in 11 A. L. R. 313; 25 A. L. R. 758.

October 10, 1924.

The opinion of the Court was delivered by MR. JUSTICE MARION.

Action to enjoin the collection of an income tax levied by the defendants under the Act of 1922 (32 St. at Large, 896). A temporary restraining order and a rule to show cause were issued by his Honor, Judge Johnson. At the hearing of the rule, the defendant interposed a demurrer to the complaint, which was overruled. From this order the defendants have appealed. The facts admitted by the demurrer are as follows:

"The plaintiff is a South Carolina corporation, engaged principally in manufacture of cotton hosiery, having its main office and principal place of business at Spartanburg. During the year 1921, it also owned and operated a similar plant at Canton, N. C., of about half the capacity of the Spartanburg plant. It made its income tax returns for the year 1921 to the Internal Revenue Department of the Federal Government, showing a net taxable income derived from all sources of $76,795.61, on which it paid an income tax to the Federal Government of $25,629.04. It also made return to the South Carolina Tax Commission, as required by the Act of 1922, showing a net income accruing to it from business conducted and carried on within the State of South Carolina of $46,851.53, upon which it paid to the State Treasurer an income tax of $3,964.53. Pursuant to the provisions of the Act of the State of North Carolina, levying a tax on income derived from business carried on in that State, it made its return to the State Department of Revenue for North Carolina, showing a net income derived from its business conducted in that State of $29,944.08, upon which it paid to the State of North Carolina an income tax of $898.32. The South Carolina Tax Commission has checked over the respondent's return to the Federal Government and to the South Carolina Tax Commission and found them to be correct in all respects, and has made no conten-

tion that there was any erroneous calculation, improper deduction, failure to disclose, or attempted concealment of income. The South Carolina Tax Commission, nevertheless, asserts that the income derived from business carried on wholly in North Carolina is subject to taxation, under the provisions of the South Carolina Income Tax Act, and demanded of respondent the payment of an additional tax of $3,680.16, with approximately $200.00 penalties."

The demurrer questions the sufficiency of the complaint on two grounds: (1) That it appears from the face of the complaint that the respondent has an adequate remedy at law, to pay the taxes under protest and sue for its recovery; and (2) that the complaint shows on its face that the respondent is liable for the payment of the contested demand.

Upon the second of the foregoing grounds, we are of the opinion that the demurrer should have been sustained. That ground, in substance, is that it appears upon the face of the complaint that the plaintiff is liable, under the provision of the Act, for the payment of the tax, the collection of which is here sought to be enjoined.

1, 2    The precise question raised is whether a domestic corporation is liable under the State Income Tax Act of 1922 (32 Stat. at Large, 896) for the payment of the income tax upon such proportion of its net income as is derived from business operations outside the State of South Carolina. The contention of the respondent, sustained by the Circuit Court, is that the question should be resolved in the negative, and that the tax imposed by the Act should be held to apply only to such proportion of the entire net income of a domestic corporation as arises or accrues from property and business operations within the State. Since, however, the provisions of the Act upon which that proposition is predicated apply alike to persons, firms, and corporations, and since, if the tax collectible from a domestic corporation is thus limited, so likewise is the tax collectible from all natural persons, firms, etc., subject to the

provisions of the Act, it is apparent that the real question presented is whether the tax imposed by this so-called Income Tax Act is limited, as to all persons and corporations subject thereto, to apply only to such proportion of the recipient's entire net income as is derived from sources and operations within the State of South Carolina. The question, manifestly, is one of serious import, notwithstanding the fact that the Act has been amended, since this case arose, by striking therefrom the expression upon which the respondent's contentions in this case are mainly rested. We think the Act, as originally enacted and as it stands for construction in the case at bar, may not soundly be construed and interpreted to limit the tax imposed upon residents and citizens of the State, natural and corporate, to income derived exclusively from sources and operations within the State.

In approaching the construction of the Act with the foregoing question in view, the essential nature and *raison d'etre* of an income tax are properly borne in mind. The income tax is primarily a subjective tax imposing personal liability upon the recipient of the income. It proceeds fundamentally upon the theory that all residents and citizens of the State, whether natural persons or domestic corporations, should contribute to the public treasury in proportion to ability to pay, measured by the amount of net income from all sources. The State's jurisdiction to levy the tax is not referable to and dependent upon jurisdiction of the property or of the business operations from which the income is derived. The State has jurisdiction, for taxing purposes, of property and of business operations conducted within its borders, regardless of whether it has jurisdiction of persons who own the property or operate the business. It can tax the property in the form of a direct ad valorem property tax or otherwise; it can tax the business operations in the form of a license tax or otherwise. If, therefore, an income tax is to reach a source of

taxable ability, not already subject to taxation, through the property tax and the business tax (taxable resources of which the State usually avails itself fully), it must necessarily apply to income derived from sources beyond the State's jurisdiction to reach otherwise than through its jurisdiction of the person of the recipient. Further, if the basic theory of the income tax is valid—that the residents and citizens of the State, natural and corporate, of whom the State has personal jurisdiction should contribute to the public treasury in proportion to *ability* to pay, and that net income is a sound measure of such ability to pay—it would seem entirely clear that the resident or citizen of the State who gathers his income from beyond the State's borders is just as *able* to pay as the resident or citizen who derives his income from sources within the State. And, indeed, as will be hereinafter pointed out, from the standpoint of an equitable distribution of the State's tax burden, it is of more importance that the tax should apply to income derived from sources outside the State than that it should apply to income derived from sources and operations within the State. Necessarily, therefore, the genuine income tax, such as the Federal income tax in force at the time of the passage of this Act, is a general personal income tax, applicable to the net income of the recipient from all sources.

Was it the intent of the Legislature, in passing the Act here under review, to enact a genuine income tax law, or merely to impose a tax upon property and business operations within the State, to be measured by the net income therefrom? The question of legislative intent is, of course, the pivotal question with which we are here concerned. It is the contention of the respondent, upheld by the Circuit Court, that it "was not the intention of the General Assembly to impose any income tax upon income derived from operations in another State"; that, while the Federal Income Tax Act (U. S. Comp. St. Ann. Supp., 1923, §§ 6336⅛a–6336⅛zzz), which imposes a general

personal income tax upon the recipient's entire income from whatever source derived, is "reenacted *totidem verbis* twice" in the State Act, it is so enacted only in so far as it is "not in conflict with any other provisions" of the Act, and "subject to the exemptions and limitations" thereinafter set out; and that there is a conflicting provision and a limitation thereinafter set out, which, in consonance with the rule that a tax statute should be strictly construed against the government, must be construed and interpreted to evince a legislative intention to limit the tax imposed to income derived exclusively from sources and operations within the State. The conflicting provision or limitation relied on to establish that intent is Section 13 of the Act, which is as follows:

"Sec. 13. *Income from Operations or Property in This State Liable to Tax.*—Where any person, firm or corporation operates and does business and receives income in South Carolina and another, or other States, such person, firm or corporation shall pay to the Tax Commission an income upon all net earnings accrued and received from operations or other sources in this State."

It will be observed that this Section, which, with the exception of purely formal provisions, is the last in the Act, is not in the form of a proviso or limitation. It is a sweeping general provision, to the effect that, where persons, firms, and corporations do business in this and other States, they *shall pay* an income tax on net earnings from operations and other sources in this State. The intent that the net income derived by "*any* person, firm or corporation" from operations in South Carolina shall not escape the payment of the tax is very clearly expressed. But, if the intent was to *limit* the tax to income derived from South Carolina sources, the language of the section itself is far from a definite expression of that idea. Assuming, however, that, standing alone, it is susceptible of the interpretation that it was the Legislature's intent thereby to limit the application of the tax to South Carolina income, whether it may soundly

32—S. C. R., 129.

be given that construction obviously depends upon the other provisions of the Act and the meaning reasonably to be attributed to the statute as a whole.

We think a careful reading of the Act as a whole discloses that it was the purpose, object, and intent of the Legislature, first, to levy a general personal income tax upon all persons and corporations who could be made subject to such a tax, viz., residents and citizens, natural and corporate, of the State; and, second, to levy a tax upon income derived from South Carolina operations or sources by any person, firm, or corporation, regardless of residence or domicile, to the end that persons and corporations not subject to the general income tax first levied, viz., nonresidents and foreign corporations, should be required to pay the tax on their net income from property and business operations within the State. Section 1 of the Act is as follows:

"Section 1. *Income Tax Levied—Incomes Taxable.*—Be it enacted by the General Assembly of the State of South Carolina: That for the purpose of raising additional revenue to pay the expenses of the government of the State of South Carolina, an income tax is hereby levied and assessed upon each and every person, firm, partnership, corporation, guardian, trustee, administrator, executor, receiver and any and all other person or persons acting in any fiduciary capacity for any person, trust or estate, upon the net income arising or accruing from every such person, firm, partnership, corporation, guardian, trustee, administrator, executor, and receiver, resident or citizen of the State of South Carolina, whether in this State or elsewhere, said income tax is hereby levied and assessed upon the net income from all interest received, property owned, and on each business, trade or profession carried on in the State of South Carolina by every such person, firm, partnership, corporation, guardian, trustee, administrator, executor and receiver, residing within the said State or elsewhere who shall receive an income from property within this State."

The section is composed of two complete, independent sentences, improperly separated by a comma. In no view of the meaning is the comma appearing between the words "elsewhere" and "said", on line 7 from the bottom, as above transcribed, the correct punctuation mark. The misuse of the comma, however, doubtless due to clerical or printer's error, is immaterial. *Archer v. Ellison,* 28 S. C., 238; 5 S. E., 713. *Kitchen v. Southern Railway,* 68 S. C., 554, 567; 48 S. E., 4; 1 Ann. Cas., 747.

The first complete, independent sentence in the section is this: "An income tax is hereby levied and assessed upon each and every person, firm, partnership, corporation," etc., "upon the net income arising or accruing from every such person, firm, partnership, corporation," etc., *"resident or citizen of the State of South Carolina, whether in this State or elsewhere."* (Italics added.) The sentence is clumsily constructed and the phrases awkwardly arranged. Upon analysis, however, it is obvious that the phrase, "resident or citizen of the State of South Carolina," refers to and modifies "person, firm, partnership, corporation," etc., the subjects upon whom the tax is levied. It is equally obvious that the phrase "whether in this State or elsewhere," refers to and modifies "income arising or accruing." The meaning is clarified by a simple rearrangement of the sentence, which places these modifying phrases nearer the words to which they relate and refer. Thus: An income tax is hereby levied upon each person, firm, partnership, corporation, etc., "resident and citizen of the State of South Carolina," upon the net income arising or accruing, "whether in this State or elsewhere" from every such person, firm, partnership, corporation, etc. We have here a clear-cut levy of a general personal tax upon every resident or citizen of the State, natural or corporate, to apply to the net income of such residents whether arising or accruing *in this State or elsewhere.* That it was the intent of the Legislature to levy this general, personal income tax, reaching income from every

source, is emphasized, reiterated, and put beyond question by the provisions of Sections 2 and 3 of the Act, which twice enact, *totidem verbis,* the sweepingly general and purely personal income Tax Act of the Federal Government imposing a tax upon the recipient's entire income.

The second complete sentence contained in this Section is this:

"Said income tax is hereby levied," etc., "upon the net income from all interest received, property owned, and on each business, trade or profession carried on in the State of South Carolina be every such person, firm, partnership, corporation," etc., "residing within the said State *or elsewhere,* who shall receive an income from property within this State." (Italics added.)

We have here a clear-cut levy of the tax upon income from South Carolina sources received by every person, firm, partnershp, corporation, etc., "residing within the State or elsewhere." It is distinctly and expressly a levy upon a kind or class of income, and not upon the subjects receiving it; the tax to apply to such income, regardless of where the recipients reside.

Reading the two foregoing sentences of Section 1, together and in conjunction with all other provisions of the Act, we have the clearly expressed intention of the Legislature: . (1) To levy a general, personal income tax, applicable to income arising or accruing, "whether in this State or elsewhere," upon all persons, corporations, etc., subject to such a tax, viz., residents and citizens of the State; and (2) to levy a tax upon the net income from South Carolina sources and operations of all persons, corporations, etc., "residing within the State or elsewhere." Our inquiry, therefore, resolves itself into the simple question of whether Section 13, to the effect that "where any person, firm or corporation operates and does business" in this and other States, such person, etc., *shall pay* upon the net earnings from operations, etc., in this State, is to be construed to

mean, as held by the Circuit Court, that the only tax imposed by the Act is a tax on income derived from sources and operations within the State. That in no view is the statute soundly susceptible of such a construction should sufficiently appear from the foregoing examination of the terms of the Act. If it does not, however, resort to familiar, settled rules of construction, in the light of the following considerations, should leave no room for doubt:

(1) If the construction of the Act approved in the Circuit decree be correct, then Section 13 has the effect of wholly abrogating the provisions of the Act above adverted to, which expressly impose a general, personal income tax, and of nullifying the clearly expressed intent of the Legislature to levy such a tax. Under that construction of the Act, the only tax collectible thereunder is not really an income tax at all, but merely a business tax; that is, an excise tax upon the handling of property and the conduct of business operations *within the State,* measured by the net income therefrom. That such a construction violates the fundamental rule of construction and interpretation that "the intention of the Legislature constitutes the law," and ignores the elementary principle that effect must be given to every part of a statute, is perfectly obvious, unless it can be made to appear that the legislative intention, evidenced by the requirement of Section 13, is so inconsistent with and repugnant to the provisions imposing the general income tax as to require their elimination.

(2) That there is absolutely no inconsistency or conflict between the provisions of the statute levying the general, personal income tax upon residents and citizens of the State, and the requirement embodied in Section 13, that "where any person, firm or corporation operates and does business and receives income in South Carolina and another, or other States, such person, firm or corporation shall pay * * * an income [tax] upon all net earnings accrued and received from operations or other sources

in this State," and that both these provisions may be given full force and effect as written, would seem too clear to warrant argumnt. Obviously, it is only in the view there is such inconsistency or repugnancy as makes the legislative intent to levy the general income tax doubtful that there is any occasion or excuse for resort to the rule that any substantial doubt in the construction of a tax statute must be resolved against the government and in favor of the taxpayer. If the intent of the Legislature is apparent from an examination and consideration of the statute as a whole, the rule of strict construction in favor of the taxpayer has no application. That rule of strict construction of penal laws and tax statutes "is subordinate to the rule of reasonable, sensible construction, having in view effectuation of the legislative purpose." (25 R. C. L., 1084, § 302. Id., 1092, § 307), and "does not prevent the Courts from calling to their aid all the other rules of construction and giving each its appropriate scope," etc. (25 R. C. L., 1085, § 302). *Santee Mills v. Query,* 122 S. C., 158, 163; 115 S. E., 202. *Scottish Union, etc., Ins. Co. v. Bowland,* 196 U. S., 611; 25 Sup. Ct., 345; 49 L. Ed., 619. Surely, if any substantial doubt may be said to exist as to the legislative intent and purpose here, it can only be conjured into being by ignoring and wholly disregarding that other cardinal and familiar rule of construction, which has been thus stated:

"The various provisions of an Act should be read so that all may, if possible, have their due and conjoint effect without repugnancy or inconsistency. The Court may not, in order to give effect to particular words, virtually destroy the meaning of the entire context; that is, give the particular words a significance which would be clearly repugnant to the statute, looked at as a whole, and destructive of its obvious intent." 25 R. C. L., 1008, § 247; 1 Bl. Com., 89.

That the statute may be construed as a consistent whole by simply giving to the language of so much of Section 1 as imposes the levy upon South Carolina

income, regardless of the residence of the recipients, and to Section 13, requiring that where any person, etc., does business in this and other States, such person, etc., shall pay upon income from South Carolina sources, the sensible, reasonable meaning that these provisions are in addition and by way of supplement to, and not in derogation of, the other provisions of Sections 1, 2, and 3, imposing the general personal income tax upon residents and citizens, natural and corporate, of the State, would seem to be self-evident. If the language of the Act referring to the imposition of the tax upon income from South Carolina sources (Sections 1 and 13) is in derogation of or by way of limitation upon the provisions imposing the general, personal income tax, then those provisions are superfluous and meaningless. On the other hand, there is no difficulty in construing the language imposing the tax on South Carolina income as it is written, as an additional provision levying a supplementary tax on income not embraced in and covered by the provisions which impose the general, personal income tax on persons, corporations, etc., subject thereto, viz., residents and citizens of the State. As such additional provision imposing a supplementary and special tax on income from South Carolina sources, it reaches and embraces a class of income not reached by the general, personal income tax imposed on residents and citizens, viz., the income of nonresidents and foreign corporations. In view of the necessity for additional language which would convey that meaning and accomplish that purpose, the legislative intent that the language of the Act directed to the imposition of a tax on income from South Carolina sources should have that consistent meaning and accomplish that consistent purpose, rather than that it should have the meaning and effect of emasculating the statute of its efficacy as a genuine income tax law and of limiting its application to a particular class of income, does not seem open to question. Certainly, in the light of the cardinal rules that every part of a statute shall be given effect, and that a statute must receive

such construction as will make all of its parts harmonize
with each other and render them consistent with its general
scope and object, that conclusion would seem inevitable.

That view of the meaning of the Act is very clearly re-
quired by the construction and interpretation of this statute
heretofore adopted by a unanimous Court in *Santee Mills
et al. v. Query et al.,* 122 S. C., 158, 163; 115 S. E., 202,
204, wherein it is said:

"So subjected, we think the provisions of the Act * * *
are fairly and legitimately susceptible of the following con-
struction and interpretation: First, all persons, firms, part-
nerships, corporations, and trustees for persons or estates,
liable to the payment of a Federal income tax, are required
to pay to the State as income a sum equal to 33 1/3 per cent.
of the amount required to be paid as income tax to the
United States Government. Second, for the purpose of
graduating such tax, of determining the amount thereof,
and of prescribing the method, means, and manner of its
assessment and collection, the provisions of the Act of Con-
gress of the United States approved November 23, 1921
(42 Stat., 227), relating to levy, assessment, and collection
of income tax by the United States Government, and Acts
amendatory thereof, passed and approved prior to the ap-
proval of the State Act, together with the rules and regula-
tions of the Department of Internal Revenue promulgated
by virtue of such Acts of Congress and which are not in
conflict with the provisions of the State Act, are adopted
and enacted as if set forth in so many words. Third, that
the duties and powers of the Commissioner of Internal Rev-
enue and the authority given to the Internal Revenue De-
partment by said Federal Income Tax Act of November
23, 1921, and existing Acts amendatory thereof, are im-
posed and conferred upon the Tax Commission of this
State in so far as applicable, and the State Tax Commission
is authorized and empowered to make such rules and regu-
latins 'not inconsistent with law' for the enforcement of the

powers and authority given under the terms of the Act as they may deem necessary. Fourth, that nonresident persons and firms and foreign corporations (construing together the several pertinent provisions of the Act) owning property within the State, or carrying on business within the State, from which a net income is derived, shall pay to the State the required tax on net income from property owned or from business operations within the State upon the same basis and subject to the same exemptions as resident taxpayers. The evident intent is to impose the State tax upon nonresident persons and foreign corporations to the extent that such nonresident and foreign corporations would be liable if their property within the State were owned, or the business done by them within the State were conducted, by residents or by domestic corporations. The liability of such nonresident persons and firms and foreign corporations is to be measured by, and the tax computed upon, the separate or separable net income accruing from business done, from operations, and from other sources within the State, to be returned in the same manner and form as to such State income as is required by the government of the United States for the return of the aggregate incomes of such taxpayers under the Federal law."

The foregoing construction not only recognizes and gives effect to the general income tax feature of the law, but applies the within the State income feature of the Act to the only class of persons, firms, and corporations affected thereby, viz., "Nonresident persons and firms and foreign corporations." Clearly, that construction of the Act cannot be reconciled with a construction of Section 13, which limits the tax imposed as to all persons, firms, and corporations, to such net income as accrues from property or operations within the State.

(3) Other pertinent rules of construction might be invoked in support of that intrpretation, but I shall content myself with the further application of only

one or two of thsee.   It is a recognized, and has been called "a reasonable and safe," rule of construction to resolve any ambiguity or inconsistency in a statute in favor of a just, equitable, and beneficial operation of the law.   25 R. C. L., 1017, § 258.   Coexistent with the rule that uncertainty in a tax statute is to be resolved in favor of the taxpayer and against the government is the more comprehensive and far-reaching principle that tax laws should not be construed as requiring any individual or class to contribute more than his or their just share of the public burdens, in the absence of an express declaration to that effect.   25 R. C. L., 1022, § 258. *Lionberger v. Rouse,* 9 .Wall, 468; 19 L. Ed., 721.   If this Act is a State Income Tax Law, as it purports to be, and, if by virtue of Section 13, the tax is limited to net income derived from sources "within the State," then the inevitable effect of the law in practical operation is to impose·upon a certain class of the State's income earners or recipients more than their just and equitable share of the general burden of taxation.

To illustrate:  Here are two men, residents and citizens of the City of Chester, S. C.   Each has a net income of $15,000.00.   One derives his income from farms and mercantile operations in the State of South Carolina; the other derives his income from investments in land and from an interest in an insurance business conducted in the State of North Carolina.   Both get the benefit of all that the government of the State, through expenditures from the public treasury for schools, roads, police protection, and the social and economic welfare of the people, can furnish.   Under the construction of this Act approved in the Circuit decree, the citizen who derives his income from his farms and mercantile business within the State, in addition to paying into the treasury of the State a direct tax on his property, real and personal, a municipal license tax on his mercantile business, and a tax on his income to the Federal Government, must pay to the State as a tax on his net income 1/3

of the amount paid as income tax to the United States. But the other citizen of Chester, whose income of $15,000.00 is derived from sources outside the State, and who gets practically as much out of the State in the benefits of government as the other man, would have to pay for the support of that government *not one cent,* exclusive of his poll tax and, perhaps, a nominal street or road tax, etc.   Between these two income earners or gatherers, an intent on the part of the Legislature to discriminate against and tax the citizen of the State who receives his income from sources and operations within the State and exempt the other is not to be readily implied.   Why resort to an "income" tax at all, if the burden thereof is to be borne exclusively by the class of the State's citizens who already pay the property and business taxes of the State?   That the construction of the Act approved in the Circuit decree, which confines the application of the tax to income derived from operations and sources within the State, would work a serious and unjust discrimination against that class of the State's citizens and taxpayers, whose income is derived from local sources in favor of that large class of the State's citizens, natural and corporate, whose income in whole or in part is derived from operations and sources outside of the State, would seem to be sufficiently apparent.

As has been well said, "in interpreting an ambiguous statute the question is what the words meant to those using them, and to ascertain this the Court should examine the statute in the light of the history of its enactment, the contemporary history of the conditions and situation of the people, the economic and sociological policy of the State, its Constitution and laws, and all other matters of common knowledge within the limits of their jurisdiction." 25 R. C. L., 1029, § 265.   Considerations of that character which need not be set forth in detail leave no room for doubt that this Income Tax Act was the outgrowth of a long continued and widespread dissatisfaction

with the taxing system of the State, a system under which the State undertook to raise practically all public revenues from a direct ad valorem tax on property. The Act was passed at a time when the property owners and business men of the State were feeling keenly the effects of industrial depression and deflation of values caused by the ravages of the boll weevil. It is a matter of common knowledge that the avowed object of this enactment was to relieve the galling pressure of the direct property tax by raising a part of the public revenues from a tax on income upon the theory that every citizen should contribute to the public treasury in proportion to his ability to pay, regardless of the nature or source of his income. That an income tax law limited in its application to income derived, for the most part, from the very property the lawmakers were seeking to relieve from undue pressure, and payable by the very class of citizens already paying the property and business taxes of the State, would be a somewhat futile and farcical method of applying the income tax theory to accomplish the object in view is self-evident. The intent to levy the general, personal income tax is clearly embraced within the four corners of the Act. But, if there were doubt as to that intent, consideration of the object of any such law, in the light of the contemporary history of the condition and situation of the people at the time of its enactment, should tend strongly to dissipate such doubt.

The foregoing views render unnecessary any consideration of the first ground of the demurrer.

The order appealed from is reversed.

MESSRS. JUSTICES FRASER and COTHRAN concur.

MR. JUSTICE WATTS dissents.

MR. CHIEF JUSTICE GARY did not participate.