**CITY OF CHARLESTON, SOUTH CAROLINA, Plaintiff,**

v.

**HOTELS.COM, LP, et al., Defendants.**

**Town of Mount Pleasant, South Carolina, Plaintiff,**

v.

**Hotels.Com, LP, et al., Defendants.**

**C.A. Nos. 2:06–cv–1646–PMD, 2:06–cv–2087–PMD.**

United States District Court, D. South Carolina, Charleston Division.

April 29, 2008.

Edward A. Berman, Edward A. Berman Law Office, Chicago, IL, Robert Allen Young, Town of Mount Pleasant, Mt. Pleasant, SC, Walter Ronald Bonds, Attorneys for Medical Help, Charleston, SC, for Plaintiff.

Bradish Johnson Waring, Thomas S. Tisdale, Jr., Nexsen Pruet Jacobs Pollard and Robinson, Charleston, SC, Deborah S. Sloan, James P. Karen, Jones Day, Dallas, TX, Jeffrey A. Rossman, Laznar P. Raynal, Nicholas M. Berg, Elizabeth B. Herrington, Paul E. Chronis, McDermott Will and Emery, Chicago, IL, Marcus Gerardo Mungioli, Brian Scott Stagner, Jason Chad Nash, Kelly Hart and Hallman, Fort Worth, TX, Karen L. Valihura, Michael A. Barlow, Skadden Arps Slate Meagher and Flom, Wilmington, DE, for Defendants.

## ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the court on Defendants' Motion for Reconsideration pursuant to Fed.R.Civ.P. 59(e), or in the alternative, to certify an interlocutory appeal in this matter pursuant to 28 U.S.C. § 1292(b). For the reasons set forth herein, the Defendants' Motions are denied.

### FACTUAL BACKGROUND

The facts, as alleged by Plaintiffs' Amended Complaints, are as follows:

Pursuant to their respective Municipal Accommodations Fee Ordinances, Charleston imposes a tax of 2% and Mt. Pleasant imposes a tax of 1% (the "tax") on the gross proceeds derived from the rental of any accommodations within their municipal boundaries. All persons renting hotel rooms within Charleston or Mt. Pleasant are required to pay the tax in addition to the gross price of the hotel room. The tax is paid by the consumer at the time of the "delivery of the accommodations to which the fee applies" and is collected on behalf of the relevant municipality by the provider of the service of the rental of accommodations. Charleston, S.C. Ordinance 1996–18, § 4; Mt. Pleasant, S.C. Ordinance 96014, § 4. Plaintiffs adopted these taxes in 1996 to help provide property tax relief to their residents.

Defendants are online sellers and/or online resellers of hotel rooms to the general public. Defendants have rented rooms in Charleston and in Mt. Pleasant to consumers and have collected accommodations taxes. Plaintiffs assert, however, that Defendants have not paid the full amount of tax due and owing to Plaintiffs on these transactions. Specifically, Defendants contract with hotels operating within Charleston and Mt. Pleasant for rooms at negotiated discounted room rates. Defendants then market these rooms on their websites, and sell the rooms at a higher marked-up price to consumers who occupy the rooms. Defendants charge and collect the accommodations taxes from online consumers at the time of the sale based on the marked-up room rates, but only remit the taxes based on the lower discount rates to the Plaintiffs. Defendants keep the difference between the amount of tax charged to the consumer and the amount remitted to the Plaintiffs.[1] Plaintiffs assert that this practice violates Plaintiffs' Municipal Accommodations Fee Ordinances and constitutes conversion, calls for an imposition of a constructive trust, and is an unfair or deceptive trade practice in violation of the South Carolina Unfair Trade Practices Act

---

1. For example, if a Charleston hotel agreed to provide a room to one of the Defendants for $50, and Defendant sold it online to a consumer for $100, Defendant would charge the 2% tax on the $100, and consumer would pay $2 in taxes to Defendant. But Defendant would only remit the 2% tax on the $50 discount rate, $1, to the hotel in question to pay to Charleston, and keep the remaining $1 as profit on the transaction.

("SCUTPA"). Plaintiffs also demand a legal accounting of all money Defendants are alleged to have charged consumers as "tax" and retained as profit.

### PROCEDURAL BACKGROUND

On April 26, 2006, Charleston filed a Complaint against Defendants in the Charleston County Court of Common Pleas. Mt. Pleasant filed a nearly identical Complaint against Defendants on May 23, also in the Charleston County Court of Common Pleas. These Complaints originally asserted causes of action for (1) violations of the Municipal Accommodations Fee Ordinances, (2) conversion, and sought (3) imposition of constructive trust and (4) a full legal accounting. Defendants removed both cases to federal district court pursuant to 28 U.S.C. § 1332 on the basis of diversity jurisdiction.

On January 11, 2007, based upon the parties' agreement and consent, the court entered Amended Scheduling Orders in both cases. Under these Orders, the parties had until January 23 to amend their pleadings. Accordingly, on January 22, Plaintiffs filed Motions to Amend their Complaints, seeking to add a fifth cause of action to their Complaints based on Defendants' alleged violation of SCUTPA, S.C.Code Ann. § 39–5–10, *et seq.* (2006). This motion was granted by the court on April 23.

On April 25, 2007, Defendants filed an Unopposed Motion to Consolidate the two cases into a single action, which the court granted on April 26. On June 4, Defendants filed the Motion to Dismiss Plaintiff's First Amended Complaint and Memorandum in Support Thereof. Plaintiffs filed a Memorandum of Law in Opposition to Defendants' motion on July 19. On August 8, Defendants filed a Reply with Supporting Memorandum in Support of Their Motion to Dismiss.

Defendants moved for dismissal of the Complaint for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. Rule 12(b)(6). On November 5, 2007, 520 F.Supp.2d 757, this court entered an order denying Defendants' Motion to Dismiss.

On November 30, Defendants filed the present Motion for Reconsideration or Certification of Interlocutory Appeal. Plaintiffs filed a Response in Opposition to this Motion on January 17, 2008. Defendants filed a Reply on January 28.

### STANDARD OF REVIEW

#### I. Motion for Reconsideration

Reconsideration of a judgment is an extraordinary remedy which should be used sparingly. *Pacific Ins. Co. v. American Nat. Fire Ins. Co.,* 148 F.3d 396, 403 (4th Cir.1998). A motion to reconsider may be granted for three reasons: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Id.* Motions to reconsider may not be used to initiate arguments or legal theories that the proponent had the ability to address prior to the judgment. *Id.*

#### II. Interlocutory Appeal

A district court may certify an issue for interlocutory appeal to the Court of Appeals under certain limited circumstances:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, *shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.* The Court of Appeals

which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b) (emphasis added). A question of law is generally considered to be controlling within the meaning of § 1292(b) if the action would have been terminated had the district court ruled the opposite way. *Klinghoffer v. SNC Achille Lauro Ed Altri–Gestione Motonave Achille Lauro in Amministrazione Straordinaria,* 921 F.2d 21, 24 (2d Cir.1990). However, certification of an interlocutory appeal should generally be limited to extraordinary cases where significant effort and expense would be spared by appellate review prior to the entry of final judgment. *Abortion Rights Mobilization, Inc. v. Regan,* 552 F.Supp. 364 (S.D.N.Y.1982). *See also In re Flor,* 79 F.3d 281, 284 (2d Cir.1996) ("[U]se of this certification procedure should be strictly limited because 'only 'exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.' '") (citations omitted).

## ANALYSIS

### I. Motion for Reconsideration

Defendants assert that this court committed two primary errors in its Order of November 5, which the court will address individually.

#### A. Whether This Court Misinterpreted the Relevant State Statutes

Defendants' first claim is that this court was required to construe all applicable tax statutes which contained any ambiguity in favor of the taxpayer. Defendants assert that the state act defining the scope of municipal ordinances and the state enabling act are both ambiguous as to whether they apply to Defendants or not. Therefore, Defendants argue that this court was in error when it held that Plaintiffs were allowed to levy accommodations taxes against Defendants.

In the context of a tax statute, Defendants are correct that ambiguities are to be resolved in favor of the taxpayer. *See, e.g., Gould v. Gould,* 245 U.S. 151, 153, 38 S.Ct. 53, 62 L.Ed. 211 (1917) ("In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen."). *See also Hadden v. South Carolina Tax Comm'n,* 183 S.C. 38, 46–47, 190 S.E. 249 (1937) ("[W]here a tax statute is ambiguous or is reasonably susceptible of an interpretation that would exclude the person or subject sought to be taxed, any substantial doubt must be resolved against the government in favor of the taxpayer.").

However, "[t]he cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *Chem–Nuclear Sys., LLC v. South Carolina Bd. of Health and Envtl. Control,* 374 S.C. 201, 205, 648 S.E.2d 601, 603 (S.C.2007). "The language of a statute must be read in a sense which harmonizes with its subject matter and accords with a general purpose." *Id.* Regarding the strict interpretation of tax statutes specifically, the South Carolina Supreme Court has held that:

If the intent of the Legislature is apparent from an examination and consider-

ation of the statute as a whole, the rule of strict construction in favor of the taxpayer has no application. That rule of strict construction of penal laws and tax statutes "is subordinate to the rule of reasonable, sensible construction, having in view effectuation of the legislative purpose," and "does not prevent the courts from calling to their aid all the other rules of construction and giving each its appropriate scope . . ." *Crescent Mfg. Co. v. Tax Comm'n,* 129 S.C. 480, 124 S.E. 761, 765 (1924). A court interpreting any sort of statute, tax or otherwise, also has a duty to interpret the statute in such a way as to avoid any absurd results that may arise from such an interpretation. *See, e.g., Johnson v. Collins Entm't Co.,* 88 F.Supp.2d 499, 508 (D.S.C.1999) ("The court will reject an interpretation of a statute which leads to absurd results that could not have been intended. The court must also presume [that the Legislature] did not intend the statute to be futile.") (brackets in original).

### 1. The State Statute Defining "Local Accommodations Tax"

First, Defendants argue that the state statute defining a "local accommodations tax is ambiguous. The statute in question provides that:

"Local accommodations tax" means a tax on the gross proceeds derived from the rental or charges for accommodations furnished to transients . . . and which is imposed on every person engaged or continuing within the jurisdiction of the imposing local governmental body in the business of furnishing accommodations to transients for consideration.

S.C.Code Ann. § 6–1–510(1). In their pleadings concerning the Motion to Dismiss, Plaintiffs and Defendants jousted over the meaning of the phrase "every person engaged or continuing within the jurisdiction of the imposing local governmental body in the business of furnishing accommodations to transients for consideration." Plaintiffs asserted it meant that every person who was engaged in the business of furnishing accommodations that were located within the jurisdiction, while Defendants asserted that it meant every person who was located within the jurisdiction engaged in the business of furnishing accommodations.

The court acknowledged in its Order that the plain language of this provision was not entirely clear. However, applying the "cardinal" rule of statutory interpretation laid down by the South Carolina Supreme Court, the court determined that the legislature intended a municipality to levy accommodations taxes against any business, regardless of where the business itself was located, which was in the business of renting out accommodations that were within municipal boundaries. This was further strengthened by the legislature's stated policy of giving South Carolina municipalities broad powers of taxation. *See, e.g.,* S.C.Code Ann. § 5–7–10 ("The power of a municipality shall be liberally construed in favor of the municipality. . . ."). Furthermore, the court noted in another section of the Order that if Plaintiffs were not able to levy accommodations taxes against businesses located outside of city limits, this would lead to the absurd result of a hotel being able to establish and operate a wholly-owned subsidiary corporation in another jurisdiction which handled all of its reservations and booking, and be completely immune from municipal accommodations taxes.[2]

**2.** As Plaintiffs point out, it would also lead to the similarly absurd result of the municipalities being unable to tax the same hotel room

the same way, solely according to who books the room. For example, if the hotel itself

Therefore, the court concluded that the statute defining "local accommodations tax" should not be read so strictly as to only apply to persons located within the municipality, but should instead be applied to any person, no matter where they are located, who is engaged in the business of renting out accommodations which are located within the municipality. In light of the principles of statutory construction, the clear purpose of the law, and the absurd results which logically follow from Defendants' proposed interpretation of the statute, the court was not clearly erroneous in this interpretation.[3]

■ Defendants also assert that this court's interpretation of the statute in question violates the Dormant Commerce Clause of the United States Constitution, which prohibits interstate taxation unless the tax "is applied to an activity with a substantial nexus" with the taxing jurisdiction. *Quill Corp. v. North Dakota,* 504 U.S. 298, 313, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992). This typically requires some sort of physical connection between the entity being taxed and the taxing jurisdiction. However, "[i]t was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of [the] state tax burden even though it increases the cost of doing business." *Western Live Stock v. Bureau of Revenue,* 303 U.S. 250, 254, 58 S.Ct. 546, 82 L.Ed. 823 (1938).

The court has no hesitation in ruling here that the Dormant Commerce Clause is not implicated by the Defendants' alleged actions. The cases cited by Defendants in which attempted taxation was struck down typically involves scenarios where the only connection between the taxed entity and the taxing jurisdiction is that goods happen to have been shipped through the jurisdiction on the way to their eventual destination. Here, there is both a substantial nexus and a physical presence between the taxing jurisdictions and Defendants, since Defendants are alleged to have proactively marketed, booked, and leased hotel rooms and other accommodations which are physically located in Charleston and Mt. Pleasant. Therefore, the court finds that allowing the levying of municipal accommodations taxes against Defendants for the types of transactions in question would not unduly restrict interstate commerce, and is not a constitutional violation.

Accordingly, the court declines to reconsider its previous ruling on the meaning of the state statute defining "local accommo-

---

booked the room at a rate of $100 per night, the City of Charleston would be able to collect $2 in accommodations tax. However, if one of Defendants booked the room for $100 per night pursuant to an agreement with a hotel in which the hotel had agreed to allow the Defendant in question to book the room at a $50 discount rate, the City of Charleston would only be able to collect $1 in accommodations tax. It would lead, then, to a scenario in which two customers purchased the exact same room at the exact same rate, but the municipality would not be able to levy the same tax on the two substantially identical transactions.

3. Defendants also persist in their assertion that the word "furnish" in the statute's phrase "in the business of furnishing accommodations to transients for consideration" should mean "equip," "outfit," or "supply." In its Order, the court rejected this definition, writing that:

> The core purpose of the Ordinances is to levy a tax on the amount of money visitors to the municipality spend on their hotel rooms or other accommodations. What is relevant, then, is not who is actually performing the upkeep of the room, but rather who is accepting money in exchange for "supplying" the room.

(520 F.Supp.2d at 768.) This court finds that this is the sole logical interpretation of the statute in question, and therefore does not find that it was clearly erroneous in its interpretation of the word "furnish."

dations tax," and denies Defendants' Motion on this ground.

### 2. The State Enabling Statute

Defendants also assert that this court misinterpreted the state enabling statute. That statute gives each South Carolina municipality the power to enact local Ordinances "including the authority to levy and collect taxes ... provided, however, that this shall not extend *the effect* of the laws of the municipality beyond its corporate boundaries." S.C.Code Ann. § 5–7–30 (emphasis added). Defendants argue that this statute is ambiguous, and that this court is therefore bound to interpret the statute as meaning that Plaintiffs exceeded the scope of the enabling statute in levying a tax against Defendants, who are located beyond the Plaintiffs' corporate boundaries. Defendants seize upon a single phrase in this court's Order in which the court wrote that:

> *The most reasonable interpretation* of the caveat "provided, however, that this shall not extend the effect of the laws of the municipality beyond its corporate boundaries" is that legislators needed to insert a provision to prevent municipalities from attempting to levy taxes against residents or businesses of other municipalities whose activities had no impact on the taxing municipality.

(520 F.Supp.2d at 766) (emphasis added). However, the Court never acknowledged any other possible reasonable interpretation, and explicitly held that:

> If, as Defendants propose, South Carolina legislators had intended to exempt from municipal taxation any person or business not located within that municipality, they could have easily done so with the explicit language to that effect. Instead, they chose to use the language limiting "the *effect* of the laws" to municipal boundaries.

*Id.* at 766 (emphasis in original). The court concluded that the intent of the legislators was clearly not to strictly limit municipal taxation as Defendants have proposed, especially in light of the enabling act's statement that "[t]he power of a municipality shall be liberally construed in favor of the municipality...." S.C.Code Ann. § 5–7–10. Furthermore, the court noted the "absurd loopholes" that would result from Defendants' interpretation of the statute. In short, the court expressed no doubt as to how the enabling statute should be read, and upon reexamination, finds its previous holding on the subject was in no way clearly erroneous.

Accordingly, the court declines to reconsider its previous ruling on the meaning of the state enabling statute, and denies Defendants' Motion on this ground.

### B. Whether This Court Erred in Ruling that Plaintiffs Did Not Fail to Exhaust Their Administrative Remedies

Defendants also argue that this court erred in ruling that the Plaintiffs did not fail to exhaust their administrative remedies. According to Defendants, the Municipal Ordinances specify procedures for their enforcement, which were not followed by Plaintiffs before Plaintiffs brought suit.

The Municipal Ordinances provide that the Director of Business License may enter the premises of any person subject to the Ordinances and inspect their books and records. Plaintiffs have acknowledged that their respective Directors of Business License have made no attempt to do so.

This court ruled that it would have been futile for the Directors to have done so, given that Defendants are involved in a multitude of lawsuits similar to the present one in jurisdictions all across the nation, and in all of them, Defendants are contesting the core issue of whether they are subject to the various municipal tax ordinances. This court held that if the Plain-

tiffs had tried to send their Directors of Business License to audit and inspect Defendants' records, Defendants simply would have denied them access, and contested the Directors' power to take such actions.

The court also held that such a power was well beyond the power of the Director of Business License, which means there was functionally no administrative procedure to exhaust. In its previous Order, this court wrote:

> The procedure outlined in the Ordinances empowers the Director of Business License to inspect, audit, and assess records to see if the correct amount of tax has been remitted. However, the central issue at this stage of the litigation is whether Defendants are subject to the Ordinances at all. Such a determination is fundamentally legal, not administrative, in nature, and the Ordinances do not give the Director of Business License the authority to determine the scope of the law. Furthermore, the court finds it difficult to believe that what Defendants actually desire is for the Director of Business License, a municipal employee working under a municipal executive who has a vested interest in maximizing tax revenue, to have the ultimate authority to determine whether parties located outside municipal boundaries are in fact subject to municipal taxes. While the Director does have exclusive control over the administrative tasks of assessing and collecting a given tax, it is the province of the courts, as the branch of government most disinterested in the outcome, to determine whether a party is subject to a tax or not.

(520 F.Supp.2d at 771.) Yet, Defendants persist in their claim that "[t]here is no basis for concluding that the Ordinances' administrative procedures would have been futile. This process would allow an administrative evaluation of *whether* Defendants are even subject to the tax, *whether* Defendants indeed collect these taxes as alleged, and the *amount* of any assessment, if any at all." (Defs.' Memo. at 14.) Defendants have made no sound argument as to why this court's ruling on the subject was clearly erroneous, and the court finds Defendants' persistence on this point puzzling and more than a little disingenuous in light of all available evidence in this case.

Finally, while Defendants cite to other courts which have dismissed similar lawsuits on the basis of failure to exhaust administrative remedies, there are an equal if not greater number of courts which have not dismissed similar lawsuits for this reason. Furthermore, the cases cited by Defendants all involve statutes which lay out much more detailed administrative remedies than the Municipal Ordinances in question, which lay out a vague enforcement mechanism and give no support to Defendants' claim that the Director of Business License is empowered to determine who is and is not subject to the Municipal Ordinances. A survey of the cases in question shows that whether the administrative procedures have been exhausted is a very fact-intensive inquiry that depends heavily on the actual ordinance itself and the administrative procedures contained therein. In the present case, the court concluded the Ordinances contained next to no administrative procedures, and the exhaustion of them would have been utterly futile and would have only delayed bringing this matter before the court. Defendants have presented no evidence beyond bare, self-serving assertions to the contrary, and so this court concludes that its previous holding was not clearly erroneous.

Accordingly, Defendants' Motion to Reconsider the court's ruling that Plaintiffs

did not fail to exhaust their administrative remedies is denied.

Since the court has found that none of Defendants' asserted grounds for reconsideration are issues on which this court's prior rulings were clearly erroneous, Defendants' Motion for Reconsideration is denied.

## II. Certification of Interlocutory Appeal

In the alternative, Defendants have moved this court to certify the issue of whether South Carolina state law precludes Plaintiffs from applying the Municipal Ordinances to Defendants for an interlocutory appeal to the Fourth Circuit Court of Appeals. Plaintiffs assert that Defendants have not met the standard for interlocutory appeal, but that even if they have, the appropriate court to decide such an issue is the Supreme Court of South Carolina, not the Fourth Circuit.

While the court, as stated above, rules that Defendants are subject to the Municipal Ordinances under South Carolina law, there are, as the court acknowledged in previous order, a few courts, applying the laws of other states and municipalities, that have determined that Defendants are not subject to municipal taxation. However, the court need not reach the issue of whether this is a question on which there is "substantial ground for difference of opinion," because this is not a "controlling question of law," and the court does not believe that granting interlocutory appeal would "materially advance the litigation."

A question of law is considered controlling for 1292(b) purposes if, had the district court issued the opposite ruling on the issue, the case would have been terminated. *Klinghoffer*, 921 F.2d at 24. Defendants assert this is the case here, writing that "resolution of the threshold issue of statutory construction could help avoid a trial altogether." (Defs.' Mem. at 16.)

While resolution of the statutory construction issue would be dispositive on some of Plaintiffs' causes of action, it would not terminate the action altogether. Regarding Plaintiffs' claim for conversion, this court wrote in its previous Order:

> Furthermore, even if Defendants were not subject to the Ordinances, Plaintiffs have stated a claim for conversion that is sufficiently strong to survive Defendants' Motion to Dismiss. For this was not a case where Defendants have merely asserted that they were not subject to the Ordinances and do not have to charge the applicable accommodations tax on the amount they charge the customer. Plaintiffs have alleged that Defendants have been charging the tax on the higher amount, but have simply refused to remit this to the municipalities. So even if the court were to find that Defendants were not subject to the Municipal Accommodations Fee Ordinances, Defendants have still charged customers an amount that was labeled as "tax," which they then kept as profit. This allegation alone is sufficient to support an action for conversion.

(520 F.Supp.2d at 772.) The court also ruled that the issue of whether Defendants were subject to the Municipal Ordinances was not dispositive as to Plaintiffs' claims for an imposition of a constructive trust, demand for an accounting, and monetary damages under the South Carolina Unfair Trade Practices Act (SCUTPA). Therefore, this is not a controlling question of law, and even if this court were to certify the issue for interlocutory appeal, the court of appeals were to accept the interlocutory appeal, and the court were to decide in favor of the Defendants, both parties would still have to come back before this court to litigate the remaining causes of action.

Regarding certification for interlocutory appeal under 28 U.S.C. § 1292(b):

[C]ertification is limited to extraordinary cases where early appellate review might avoid protracted and expensive litigation. It is not intended as a vehicle to provide early review of difficult rulings in hard cases. Nor is it appropriate for securing early resolution of disputes concerning whether the trial court properly applied the law to the facts.

*Regan,* 552 F.Supp. at 366 (internal citations omitted). Since this litigation would continue before the court regardless of what the appellate court decided, the court cannot see how certifying this question for interlocutory appeal would materially advance this litigation towards a more efficient and expedient conclusion.[4]

Accordingly, Defendants' Motion for Certification of this issue for interlocutory appeal is denied.

### CONCLUSION

It is, therefore **ORDERED,** for the foregoing reasons, that Defendants' Motion for Reconsideration and Certification for Interlocutory Appeal be **DENIED.**

**AND IT IS SO ORDERED.**

---

4. Since the court is not certifying this question for interlocutory appeal, it need not and does not address the issue of whether the state or federal appellate court would be the appropriate court to hear such an appeal.