22321

William F. DUNCAN, Jr., as Executor under the Will of Dr. William F. Duncan, Sr., Deceased, Appellant, v. INVESTORS DIVERSIFIED SERVICES, INC., and Mary Hudson Duncan Sellers, Respondents.

(330 S. E. (2d) 295)

Supreme Court

*James B. Richardson, Jr.* of *Ham & Richardson,* Columbia, *for appellant.*

*Forrest C. Wilkerson* of *Roddey, Carpenter & White,* Rock Hill, *for respondent Investors Diversified Services, Inc.*

*B. D Hayes* and *John C. Hayes, III* of *Hayes, Brunson & Gatlin,* Rock Hill, *for respondent Mary Hudson Duncan Sellers.*

Heard April 23, 1985.

Decided May 15, 1985.

*Per Curiam:*

The single issue presented in this case is whether or not the respondent Mary Hudson Duncan Sellers should be denied the money benefits derived from what is commonly known as a Keogh retirement plan. The trial judge concluded respondent was entitled to the benefits. We affirm and adopt the trial Judge's order as modified.

Appellant, executor and son of the deceased Dr. William F. Duncan, Sr., who established the Keogh plan, seeks to have the benefits from the Plan placed in the Estate. He contends Sellers is barred from receiving benefits on the grounds of unclean hands and public policy. We disagree.

## FACTS

Dr. William F. Duncan, Sr. operated his own dental practice. Sometime in the early 1960's, the exact date not being of record, Dr. Duncan established the Keogh retirement plan with Investors Diversified Servies (I.D.S.) acting as custodian. Sellers began working as a dental technician in Dr. Duncan's office in 1960. During the course of her employment, Dr. Duncan had made contributions to the plan on behalf of Sellers, as an individual participant and, of course, had also paid her a salary.

In 1968 Dr. Duncan and Mary Sellers were married. After the marriage, Sellers continued working; however, she no longer received a salary, and Dr. Duncan discontinued payments to the plan on her behalf. Sellers testified that she worked without compensation for nine years with the impression that the salary she would have received was being applied to Dr. Duncan's Keogh plan to which she would be designated beneficiary.

On March 24, 1977, Dr. Duncan adopted an amended version of the profit-sharing plan and also signed an amended custodial agreement. He further executed a document entitled "Designation of Beneficiary Under the Self-Employed Profit Sharing Plan of William Francis Duncan." By this form, he designated Mary Hudson Duncan (now Sellers) beneficiary.

Over the course of the marriage, Dr. Duncan's drinking habits worsened, causing him to miss time from his practice. On several occasions, Sellers was required to hospitalize him in institutions specializing in the treatment of alcoholics. While on a vacation trip, an intoxicated Dr. Duncan injured himself in a fall. After caring for him during a period of convalescence, Sellers left the marriage, and the parties lived separate and apart.

On November 17, 1977, Sellers obtained a divorce in the Dominican Republic. Within a day she married Thomas Sellers, Dr. Duncan's cousin.

On November 23, 1977, Dr. Duncan executed a second will which mentioned neither the original Keogh plan, nor any amendment to it. The will was signed six days after the divorce and approximately five years prior to Dr. Duncan's death.

Dr. Duncan died in 1982. His designation of Mary Hudson Duncan as beneficiary of the Keogh plan had not been changed.

## DISCUSSION OF LEGAL PRINCIPLES

Generally, and by analogy, with respect to an ordinary life insurance policy, it is an elementary principle of law that if a policy is validly issued, then, in the absence of a contrary provision in the policy, a contrary statute, or a contrary insurance regulation, the rights of the beneficiary are not affected even though the beneficiary ceases to have an insurable interest in the life of the insured. 43 Am. Jur. (2d), *Insurance*, § 977. The same principle has been held applicable where the insured spouse has become divorced from the beneficiary spouse. The divorce does not of itself operate to defeat the beneficiary's claim. 44 Am. Jur. (2d), *Insurance*, § 1714.

To support his contention that the equitable doctrine of clean hands should bar Sellers from collecting the proceeds of the plan, appellant relies upon two cases, *Brantley v. Skeens*, 266 F. (2d) 447 (D.C.Cir. 1959), and *Brinson v. Brinson*, 334 F. (2d) 155 (4th Cir. 1964), both of which are distinguishable on a crucial point. In those cases the issue was whether the former spouse, whose conduct had been highly questionable, qualified as either the "widow", "widower", or "lawful widow" to receive proceeds of an insurance policy issued pursuant to the Federal Employees Group Life Insurance Act. 5 USCA § 2093.

In the present case, the deceased insured had specifically designated Mary Hudson Duncan as his named beneficiary. Both *Brantley* and *Brinson* noted the absence of named beneficiaries in their factual situations. *Brantley*, 266 F. (2d) 447, at 450 (D.C.Cir. 1959); *Brinson*, 334 F. (2d) 155, at 157 (4th Cir. 1964).

The case of *Kurtz v. Dickson*, 194 Va. 957, 76 S. E. (2d) 219 (1953), is most factually and legally on point. There Hobbs, a policeman in Norfolk, designated his wife, Lucille, as the beneficiary of his city employees retirement plan. Hobbs subsequently divorced Lucille on the grounds of desertion and married Ann, with whom he lived until his death. Lucille also remarried. At the time of his death, Hobbs had not

changed the beneficiary designation, though he had the right to do so. The second wife, Ann sued for the funds.

The Virginia Court held that Lucille's entitlement to the funds was not a marital right, but rather a right arising out of the agreement between Hobbs and the City of Norfolk.

The Court noted the reference to a particular person as beneficiary. *See Kurtz*, 194 Va. at 961, 76 S. E. (2d) at 221. Similarly, on the beneficiary designation form, Dr. Duncan specified Mary Hudson Duncan.

Furthermore, Dr. Duncan had the absolute right to change the beneficiary of his Keogh plan, but did not exercise that power. Five years elapsed between the date of divorce and Dr. Duncan's death. Six days after Sellers left to obtain a Dominican divorce, Dr. Duncan executed a second will completely deleting her, yet he did not procure a new beneficiary designation form from IDS, a much simpler procedure.

Appellant testified that he had found frequent notices from IDS to Dr. Duncan which should have served to remind him about the plan. The actions of Dr. Duncan suggest he was acutely aware of the matters he wanted changed and those he wanted to remain unchanged.

Finally, there is evidence Sellers worked for Dr. Duncan for almost nine years without a salary and understood her own participation in the plan was terminated upon their marriage so more money could be channelled to his Keogh plan, to which she would be designated beneficiary. In light of these facts, Dr. Duncan's inaction is even more acceptable as respecting a financial obligation to Sellers. Regardless, as in *Kurtz*, this Court must assume that Dr. Duncan intended for Sellers to remain the named beneficiary of the plan.

## PUBLIC POLICY

Appellant also asks the Court to deny the named beneficiary's claim to the proceeds of the Keogh plan as a matter of public policy. However, this Court cannot justify upsetting the contractual rights of the parties involved on that basis. "Courts should not annul contracts on doubtful grounds of public policy." *Warren v. Pilgrim Health & Life Insurance Company*, 217 S. C. 453, 456, 60 S. E. (2d) 891, 893 (1950); *Ellison v. Independent Life and Accident Insurance Company*, 216 S. C. 475, 58 S. E. (2d) 890, (1950).

Appellant cites S. C. Code Ann. § 21-7-230 (1976) which concerns the revocation of a will by divorce. This statute is very specific and does not disclose a legislative intent that divorce should nullify or revoke a beneficiary designation.

In considering the issue of public policy, we note other statutory law does not demand strict severance of economic ties between divorced spouses. One South Carolina statute mandates conversion privileges for divorced spouses where both are covered under accident, health, or accident and health insurance policies. S. C. Code Ann. § 38-35-145 (1976).

In light of the specificity of S. C. Code Ann. § 21-7-230 (1976) and the existence of S. C. Code Ann. § 38-35-145 (1976), this Court cannot hold that public policy would dictate Sellers' loss of the benefits to which she is legally entitled as the named beneficiary of the Keogh plan. Therefore, the lower court's order is

Affirmed.

CHANDLER, J., not participating.