484 S.E.2d 112

**ESTATE OF Mitchell Reid REVIS, by his duly appointed Personal Representative, Dorothy F. REVIS, Appellant,**

v.

**Louella M. REVIS and Mitchell Revis, Respondents.**

No. 2647.

Court of Appeals of South Carolina.

Heard Dec. 3, 1996.

Decided March 31, 1997.

---

472

474

Tom W. Dunaway, III and J. Kirkman Moorhead, both of Dunaway & Associates, Anderson, for appellant.

Theodore A. Snyder, Jr., Walhalla; and William B. Long, Jr., Greenville, for respondents.

HOWARD, Judge:

This is an action brought by the personal representative of the estate of Mitchell Revis (Revis), deceased, for the return of life insurance proceeds paid to his estranged second wife, Louella Revis (second wife), following his death. The case was referred by consent to the master-in-equity with finality. The master ruled that a separation agreement executed between Revis and his second wife four years prior to his death which contained only general release language was not a contractual relinquishment of her entitlement to life insurance proceeds as the named beneficiary following his death. We agree and affirm.

## FACTS

Mitchell Reid Revis was first married to Dorothy Revis, who appears in this suit as the personal representative of Revis's estate.[1] They were married on May 25, 1966 and divorced in October of 1981. Revis then married Louella Revis in 1984. They separated on September 21, 1988, but were never divorced. On November 11, 1988, Louella and Mitchell Revis entered into a "Complete Property and Support

---

1. Dorothy Revis filed a disclaimer of any personal interest in the estate of Mitchell Revis with the probate court.

Settlement Agreement" which was later incorporated into an order of the family court.

The property settlement agreement did not specifically mention life insurance. It did contain the following language:

[T]he parties hereto now consider it to [sic] their respective best interests to settle between themselves all matters in issue and all matters heretofore arising or hereafter to arise from their marital union and [the parties] have reached a permanent and complete agreement and now wish to reduce their agreement to writing and desire that it shall constitute the total agreement between them with respect to all matters relating to alimony, property division, custody, support, attorney's fees, and all other matters which were raised or could have been raised between the parties hereto, other than the issue of divorce itself. . . .

The property settlement agreement also provided:

The Husband and Wife hereby releases [sic] the other of all claims of support, maintenance and alimony, and also all rights and claims of property, inheritance, descent, distribution and administration in the estate of the other, real, personal or mixed, now owned or hereafter acquired, and all other rights or claims growing out of the marriage relation of the parties. . . .

. . . The parties hereby acknowledge that they are in exclusive possession of the separate and marital properties to which they are entitled, and hereby release and relinquish any and all right, title and interest in and to the personal, real, and mixed property of the other. Further the parties each release and relinquish any and all right, title and interest, including but not limited to all title and equitable interest, which each may have in any other property, monies, checking and savings, stocks, certificates of deposit, investments, business interests and ventures of any nature, and in any and all properties owned by or in the name of the other. . . .

By this language the estate maintains Louella Revis relinquished any interest she had in Revis's insurance policies.

After entering into the agreement, Mitchell Revis made no changes in his existing life insurance policies, pension, or health insurance plans. However, he did designate his adult

son as the beneficiary of a newly purchased $250,000 life insurance policy.

When Revis died, life insurance proceeds of $282,000 were paid to his second wife as the named beneficiary. Dorothy Revis subsequently brought this action as personal representative for the return of the proceeds. Revis's heirs are his son from his first marriage and a daughter born after his first marriage but before his second marriage.

## SCOPE OF REVIEW

This is a declaratory judgment action brought to determine the interests of Louella Revis and the heirs of Mitchell Revis in certain life and other insurance proceeds. Declaratory judgment actions can be either legal or equitable, depending upon whether law or equity would have had jurisdiction, absent the declaratory judgment procedure. *Felts v. Richland County*, 303 S.C. 354, 400 S.E.2d 781 (1991). To make this determination we look to the main purpose of the action as determined by the complaint. *Insurance Fin. Servs., Inc. v. South Carolina Ins. Co.*, 271 S.C. 289, 247 S.E.2d 315 (1978). The main purpose of this action as determined from the complaint is the recovery of life insurance proceeds paid to Louella Revis.

Generally, an action on a life insurance policy is a legal action involving a question of contract law. *Rickborn v. Liberty Life Ins. Co.*, 321 S.C. 291, 468 S.E.2d 292 (1996). Thus, for example, where the action involves the question of the entitlement of a widow to life insurance proceeds after she has caused the death of her spouse, the action is one at law. *Wilson v. Wilson*, 312 S.C. 172, 439 S.E.2d 323 (Ct.App.1993), *rev'd on other grounds*, 319 S.C. 370, 461 S.E.2d 816 (1995).

In an action at law, tried without a jury, the judge's findings will not be disturbed unless they are without evidentiary support. *Townes Assocs. Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E.2d 773 (1976). A judge's findings are equivalent to those of a jury in an action at law. *Id.*

## DISCUSSION

 It is settled that an insurance policy is a contract between the insured and the insurance company, and the terms are to be construed according to contract law. *Rickborn*, 321 S.C. 291, 468 S.E.2d 292. An insured's designation of the beneficiary of his or her life insurance policy is a contractual matter between the insured and the insurer. *Id.* Consequently, divorce in and of itself has generally been held not to affect or defeat one spouse's rights as a designated beneficiary in a life insurance policy on the other spouse's life, absent a change in the designation of the beneficiary or a provision in the life insurance contract providing for the ineligibility of the beneficiary if the couple is not married at the time of death. *See Duncan v. Investors Diversified Servs. Inc.*, 285 S.C. 467, 470, 330 S.E.2d 295, 296 (1985) ("Generally, and by analogy, with respect to an ordinary life insurance policy, it is an elementary principle of law that if a policy is validly issued, then, in the absence of a contrary provision in the policy, a contrary statute, or a contrary insurance regulation, the rights of the beneficiary are not affected even though the beneficiary ceases to have an insurable interest in the life of the insured.").

Although a divorce does not itself affect a beneficiary's right to insurance proceeds, it is generally recognized that a beneficiary may contract this right away through a separation or property settlement agreement, even if the beneficiary designation is not formally changed. *See Moseley v. Mosier*, 279 S.C. 348, 306 S.E.2d 624 (1983) ("[The parties] may agree to any terms they wish as long as the court deems the contract to have been entered fairly, voluntarily and reasonably."); *see also* Debra E. Wax, Annotation, *Property Settlement Agreement as Affecting Divorced Spouse's Right to Recover as Named Beneficiary under Former Spouse's Life Insurance Policy*, 31 A.L.R.4th 59 (1969).

 Whether a property settlement agreement should be deemed to bar the divorced wife from receiving the insurance benefits is a question of the construction of the agreement itself. In South Carolina, the construction of a separation agreement is a matter of contract law. *McDuffie v. McDuffie*, 313 S.C. 397, 438 S.E.2d 239 (1993). Therefore,

when construing separation agreements the intention of the parties is controlling. *Id.* at 400, 438 S.E.2d at 241. Where a property settlement agreement is ambiguous, the court may consider parol evidence to ascertain the intent of the parties. *Id.* "An ambiguous contract is one capable of being understood in more ways than one, an agreement obscure in meaning through indefiniteness of expression, or having a double meaning." *Ebert v. Ebert,* 320 S.C. 331, 338, 465 S.E.2d 121, 125 (Ct.App.1995), *cert. denied* (Oct. 17, 1996). Likewise, where an agreement is silent as to a particular matter and because of the nature and character of the transaction an ambiguity arises, parol evidence may be admitted in order to supply a deficiency in the language of the contract. *Id.*

The Revises' separation agreement does not have plain language which directly addresses the life insurance policies owned by Revis at the time. In *Davis v. Southern Life Ins. Co.,* 249 S.C. 194, 153 S.E.2d 399 (1967), our supreme court ruled that during the lifetime of the insured the named beneficiary has no vested property right in a life insurance contract, but merely an expectancy, where a right to change the beneficiary has been reserved to the insured in the policy. Complete control of the policy remains with the insured. *Id.* Therefore, as the master ruled, the general language releasing property interests, as opposed to expectancies, is capable of more than one interpretation.

 We, therefore, conclude that when a separation agreement does not specifically address a life insurance policy in which one spouse has an expectancy as a named beneficiary, general language of release such as that found in this case is not controlling on the issue. Where the insured spouse maintains ownership and control of the policy, including the right to change beneficiaries, the question of whether or not the agreement extinguishes the right of the named beneficiary to claim the benefits upon the death of the estranged spouse depends upon the intention of the insured spouse as determined by the facts of each case. This ruling is consistent with the majority of other jurisdictions which have addressed the issue. *See* Debra E. Wax, Annotation, *Property Settlement Agreement as Affecting Divorced Spouse's Right to Recover as Named Beneficiary under Former Spouse's Life Insurance*

*Policy,* 31 A.L.R.4th 59 (1969); 4 *Couch on Insurance 3d* § 64:23 (1996), and cases cited therein.

 In this case the evidence established Mitchell Revis and his second wife separated and executed a property settlement agreement in 1988. Mitchell Revis died four years later without removing Louella Revis as the beneficiary on his life insurance policy. *See Duncan,* 285 S.C. at 471, 330 S.E.2d at 297 (finding a five year lapse in time between divorce decree and death of husband without changing ex-wife as named beneficiary of husband's Keogh plan a significant factor in determining his intent that ex-wife receive distribution of proceeds); *see also Aetna Life Ins. Co. v. Wadsworth,* 102 Wash.2d 652, 689 P.2d 46 (1984) (finding one year a reasonable time for the insured to make a change in beneficiaries). The evidence did reveal Revis executed a beneficiary designation form after his separation agreement naming his son beneficiary of another policy. This permits an inference he was aware of his life insurance and possessed the knowledge to make beneficiary changes. This also allows the negative inference he decided not to do so.

Though the parties were separated, they never received a formal divorce. According to the second wife, they continued to communicate with one another after their separation and maintained a cordial relationship which included trips out of town, lunches, dinners, and attending church together. According to the testimony, Mitchell Revis indicated he wanted to provide for his second wife.

Since the property settlement agreement did not specifically address insurance and Mitchell Revis did nothing to change his second wife as the beneficiary of his life insurance policy from the time of their separation until his death four years later, the master concluded from the evidence that the general language in the agreement was not intended to act as a relinquishment of the second wife's right to claim the proceeds at Revis's death. We find the master's conclusion is soundly supported by this record.

 The appellant next asserts the master erred by making a finding of fact in derogation of stipulations entered by the parties. The master found as a fact that Revis named his son as the beneficiary of a $250,000 life insurance policy after

he entered into the separation agreement. His ultimate conclusion rested in part on this finding, as previously discussed.

The parties entered into various stipulations of fact. Stipulation # 3 stated: "Subsequent to 11 November 1988, Mitchell Reid Revis *made no changes* to his life insurance policies, provision plans, retirement account, or accidental death insurance." (Emphasis added). Stipulation # 10 reads: "The designations by Mitchell Reid Revis of beneficiaries are described in a letter dated 7 June 1995 from ... W.R. Grace & Co., and are shown or explained in the documents attached to his letter, all of which are attached hereto and incorporated in this stipulation as Exhibit C." Exhibit C consists of a letter discussing Revis's designation of his son, Will, as the beneficiary on an additional life insurance policy and the policy enrollment form where he named his son as beneficiary of the plan on February 23, 1992.[2]

■ We conclude the appellant's argument is without merit. The admission of evidence is within the sound discretion of the trial judge, whose decision will not be disturbed on appeal absent an abuse of that discretion. *Washington v. Whitaker,* 317 S.C. 108, 451 S.E.2d 894 (1994). The master interpreted the stipulation to prevent only evidence which would tend to prove Revis changed the policies which were in existence at the time the parties entered into the separation agreement. The policy of insurance which designated the son as beneficiary did not exist at that time. The master's interpretation is consistent with the stipulations.

■ Furthermore, where a conflict exists between a stipulation and an exhibit attached to the stipulation, then it must be resolved in accordance with the exhibit. *See* 73 Am.Jur.2d *Stipulations* § 7 (1974) ("Where words of a stipulation conflict with an exhibit attached to it, any allegation in the stipulation

---

2. The appellant alternatively argues the trial court's finding as to the date when Mitchell Revis designated his son as beneficiary on another policy was erroneous because it was based on speculation. Some confusion existed at the trial level because the date on the policy enrollment form was not legible. The date reads 2–23–9_, with the underlined area being the illegible part. We find this of no consequence because it is obvious this occurred sometime in the 1990s, after Louella and Mitchell Revis had separated and executed the property settlement agreement.

which conflicts with the exhibit must yield thereto and be disregarded insofar as the conflict extends."). Thus, the master was correct in his decision.

 Finally, the appellant contends testimony from the second wife violated the "dead man's" statute. *See* S.C.Code Ann. § 19–11–20 (1985). The testimony related to Mitchell and Louella Revis's relationship after their separation. The "dead man's" statute is an exception to the general rule of witness competency. It is to be read restrictively, and the party requesting its use bears the burden of establishing its applicability. *U.S. Fire Ins. Co. v. Macloskie*, 320 S.C. 459, 465 S.E.2d 759 (Ct.App.1995). The first sentence of the "dead man's" statute provides:

[N]o party to an action or proceeding, no person who has a legal or equitable interest which may be affected by the event of the action or proceeding, no person who, previous to such examination, has had such an interest . . . shall be examined in regard to any transaction or communication between such witness and a person at the time of such examination deceased, insane or lunatic as a witness against a party then prosecuting or defending the action as executor, administrator, heir-at-law, next of kin, assignee, legatee, devisee or survivor of such deceased person . . . when such examination or any judgment or determination in such action or proceeding can in any manner affect the interest of such witness. . . .

S.C.Code Ann. § 19–11–20 (1985).

The second sentence of the statute provides:

[W]hen such executor, administrator, heir-at-law, next of kin, assignee, legatee, devisee, survivor or committee shall be examined on his own behalf in regard to such transaction or communication or when testimony of such deceased . . . in regard to such transaction or communication . . . shall be given in evidence on the trial . . . in behalf of such . . . administrator [or] . . . survivor . . . then all other persons not otherwise rendered incompetent shall be made competent witnesses in relation to such transaction or communication on said trial. . . .

*Id.*

The second sentence of the "dead man's" statute provides the only two statutory exceptions to the prohibition provided

by the first sentence: (1) where the administrator or survivor testifies regarding the transaction or communication with the deceased and (2) where the testimony of the deceased regarding the transaction or communication is given in evidence by the administrator or survivor. Under the first sentence of the statute, the second wife's interest in Mitchell Revis's insurance policy would act as a bar to her testimony on this subject. However, once Dorothy Revis testified on the subject in her capacity as the personal representative for the estate, the exception found in the second sentence of the section rendered the second wife competent to testify on the same subject. *Cf. McBeth v. Bishop*, 278 S.C. 443, 298 S.E.2d 441 (1982) (finding testimony which was normally inadmissible because of the "dead man's" statute admissible because another witness testified to substantially the same matters).

For the foregoing reasons, the decision of the trial court is **AFFIRMED.**

HOWELL, C.J., and HUFF, J., concur.