**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1873**

THAVIAN FORD,

                    Plaintiff – Appellee,

          v.

BIG DADDY DRAYAGE LLC,

                    Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Beaufort.    Solomon Blatt, Jr., Senior District Judge.  (9:13-cv-00175-SB)

Submitted: January 16, 2014            Decided:  March 5, 2014

Before NIEMEYER, SHEDD, and DIAZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Ryan D. Gilsenan, David S. Yandle, WOMBLE CARLYLE SANDRIDGE & RICE, PLLC, Charleston, South Carolina, for Appellant. Tom Johnson, Warren Johnson, LAW OFFICE OF DARRELL THOMAS JOHNSON, JR., LLC, Hardeeville, South Carolina; Algernon G. Solomons, III, SPEIGHTS & RUNYAN, Hampton, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Big Daddy Drayage LLC, ("BDD") appeals from the district court's order denying its motion to dismiss Thavian Ford's breach of contract complaint on the basis of a forum-selection clause in another contract requiring litigation in New Jersey. BDD argues that the two contracts are related. We affirm.

Ford was an independent contractor for BDD pursuant to the terms of a written Independent Contractor Agreement ("ICA") that Ford and BDD entered into in September 2008 and renewed in 2011.[1] The ICA makes no mention of the lease or sale of a vehicle. The ICA expressly establishes Newark, New Jersey, as the exclusive forum for resolving any disputes "arising from or related to this agreement." In addition, the ICA provides that the "Agreement contains the entire understanding between the parties relating to the transaction contemplated by this Agreement. All prior contemporaneous agreements . . . are merged in this Agreement and shall be of no further force or effect."

---

[1] The parties provide the 2011 renewal but not the original 2008 contract. It is unclear whether the terms of the renewal contract were similar or identical to the original contract. Nonetheless, the parties rely exclusively on the 2011 contract.

Also in September 2008, Ford and BDD entered into a Lease to Purchase Agreement, ("LPA") whereby Ford paid monthly installments toward the ownership of a tractor supplied by BDD. In a paragraph entitled "Contractor Status," the LPA provides that "[a]t all times during the term of this Agreement, Lessee agrees to be under contract to [BDD] . . . under the terms if of an Independent Contract Agreement. If, at any time during the term of this Agreement, Lessee is not under contract with [BDD], this Agreement shall terminate immediately."[2] The LPA does not contain a forum-selection clause.

In January 2013, Ford filed a class action complaint against BDD in the District of South Carolina, averring that he and other drivers had fully paid for their vehicles but BDD refused to transfer title or refund payments. Ford stated that BDD sold automobiles in South Carolina. The complaint does not include allegations regarding the employment practices of BDD, nor does it mention the ICA.

BDD filed a motion to dismiss and/or to transfer venue to New Jersey, based upon the forum-selection clause in the ICA.

---

[2] This odd language ("if of" and "Independent Contract Agreement" instead of "Independent Contractor Agreement") is termed a scrivener's error by Appellant. Appellee, on the other hand, argues that the language renders the clause "unclear." The district court cited this language in determining that the contract was ambiguous.

The district court denied the motion to dismiss, finding that the forum-selection clause in the 2011 ICA does not apply to Ford's claims arising out of the 2008 LPA. The court ruled that, "at best," the language is unclear and that any ambiguity should be construed against the drafter, BDD. The district court certified the matter for an interlocutory appeal, pursuant to 28 U.S.C. 1292(b), noting that there was a "substantial ground for difference of opinion." BDD then applied for permission to appeal in this court, which we granted.

A motion to dismiss based on a forum-selection clause should be treated as a Rule 12(b)(3) motion to dismiss based on improper venue. Sucampo Pharm., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 550 (4th Cir. 2006). We review a district court's ruling on such a motion de novo. Id.

The rules of contract construction are designed to determine the intent of the parties. Goldston v. State Farm Mut. Auto. Ins. Co., 594 S.E.2d 511, 518 (S.C. Ct. App. 2004). Under South Carolina law,[3] where a contract is clear and unambiguous, a court should rely on the plain language of the contract, "interpret[ing] its lawful meaning and the intent of

---

[3] Ford cites South Carolina law without analyzing its applicability, and BDD cites only to federal case law without analyzing the choice-of-law issue. We conclude that South Carolina law, the state where the contract was presumably made and performed, is applicable.

4

the parties as found within the agreement." Smith-Cooper v. Cooper, 543 S.E.2d 271, 274 (S.C. Ct. App. 2001); see also Jordan v. Sec. Group, Inc., 428 S.E.2d 705, 707 (S.C. 1993). A contract is ambiguous if it could be understood in more ways than one, if its terms are indefinite, or if it could have a double meaning. Estate of Revis v. Revis, 484 S.E.2d 112, 116 (S.C. Ct. App. 1997). Where a contract is found to be ambiguous, a court may look outside the four corners of the document to determine the intent of the parties. Id. Ambiguities should be construed against the drafter. See Wheeler v. Dynamic Eng'g, Inc., 62 F.3d 634, 638 (4th Cir. 1995).

In their briefs, the parties essentially dispute the applicability of two cases to the instant proceedings: Sucampo and Drews Distrib., Inc. v. Silicon Gaming, Inc., 245 F.3d 347 (4th Cir. 2001). Both of these cases found that two contracts were related for the purposes of ruling that a clause in one contract applied to the other. We find the instant case materially different from both Sucampo and Drews and conclude that the district court correctly found that the LPA is not governed by the forum-selection clause in the ICA. Specifically, unlike the instant case, the contract with the forum-selection clause in Sucampo was signed before the agreement at issue--an agreement specifically executed "under"

5

the first.  See Sucampo, 471 F.3d at 546–47.  And in Drews, the contract with the forum-selection clause included a merger clause specifically excepting the agreement at issue so it would remain in force.  Drews, 245 F.3d at 348–49.

Here, besides the fact that BDD would only lease tractors to its own independent contractors, Ford's ICA and LPA are entirely separate.  Moreover, the LPA does not reference a specific independent contractor agreement nor state that the LPA is governed by any such agreement; instead, the LPA merely (and somewhat ambiguously) states that Ford had to be working under contract with BDD in order for the LPA to be in effect.  Furthermore, Ford's ICA--the contract with the forum-selection clause--does not require or even mention a lease-to-purchase agreement, and the LPA was not explicitly executed pursuant to the ICA.

BDD, the drafter of both contracts, did not attempt to incorporate the LPA into the ICA or except the LPA from the operation of the ICA's merger clause.  Given that the merger clause applies to the entirety of the "transaction contemplated by this Agreement," the LPA must then be neither contemplated by nor related to the Agreement.  If it were, the merger clause's failure to except the LPA would have voided the LPA, and neither party argues that the LPA was void.  Finally, as the district

6

court found, the language referencing a "contract agreement" in the LPA is ambiguous.

Given the material differences between the instant case and <u>Sucampo</u> and <u>Drews</u>, and the fact that BDD drafted the agreements in question, the district court correctly ruled that the ICA's forum-selection clause is not applicable to the current conflict arising out of the LPA. Accordingly, we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>