# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The Estate of Richard Walter Meier, by and through Conrad Meier, its Personal Administrator, and The Estate of William Carl Meier by and through Conrad Meier, its Personal Administrator, Respondents,

v.

Mary J. Burnsed, Petitioner.

Appellate Case No. 2023-000385

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From Beaufort County
The Honorable Marvin H. Dukes, III, Circuit Court Judge

---

Opinion No. 28264
Heard October 31, 2024 – Filed March 5, 2025

---

## AFFIRMED AS MODIFIED

---

Peggy McMillan Infinger, of Belk Cobb Infinger & Goldstein, PA, of Beaufort; and James B. Richardson, Jr., of James B. Richardson, P.C., of Columbia, both for Petitioner.

H. Fred Kuhn, Jr., of Kuhn Law Firm LLC, of Beaufort, for Respondent.

**JUSTICE VERDIN:** Mary J. Burnsed appeals the court of appeals' opinion reversing the circuit court's grant of summary judgment and holding that section 62-2-507(c) of the South Carolina Probate Code (2022) revoked her status as primary beneficiary of the life insurance policy of her former husband William Carl Meier (Decedent). We affirm as modified.

## FACTUAL/PROCEDURAL BACKGROUND

Decedent and Burnsed married on July 19, 1997. Transamerica Premier Life Insurance Company, Inc. issued a $250,000 life insurance policy (the Policy) to Decedent on June 16, 1998. Decedent named Burnsed as the primary beneficiary and his brother, Richard Walter Meier (Brother), as the contingent beneficiary. However, he retained the power to change the beneficiaries of the policy. Burnsed and Decedent divorced on November 26, 2002. The final divorce decree did not address the Policy expressly but provided that neither party had claims for spousal support, alimony, or an equitable interest in the other's assets or debts. The decree also stated that each party "waived any claim" they may have had against their former spouse.[1] Decedent maintained the Policy until his sudden death on December 26, 2017, never having removed Burnsed as the primary beneficiary.

On February 5, 2018, Decedent's son, Conrad Meier (Son), as the personal representative of Decedent's estate, and Brother[2] (collectively Respondents), filed

---

[1] Specifically, the order contained the following two findings: (1) "Neither party desires spousal support or alimony from the other party and each party waives any claim he/she may have against the other party" and (2) "Neither party has acquired assets or debts during the marriage in which the other party would have an equitable interest." Because the divorce decree did not expressly state Burnsed was to be kept or removed as primary beneficiary, we do not address whether the decree affected Burnsed's status as beneficiary. *See* S.C. Code Ann. § 62-2-507(c) (noting that the presumption of revocation upon divorce does not apply when "the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after marriage" exists to the contrary); *see also Est. of Revis by Revis v. Revis*, 326 S.C. 470, 478, 484 S.E.2d 112, 116 (Ct. App. 1997) ("[W]hen a separation agreement does not specifically address a life insurance policy in which one spouse has an expectancy as a named beneficiary, general language of release . . . is not controlling on the issue.").

[2] Due to Brother's death during the pendency of this appeal, Son, being the personal representative of Brother's Estate, was substituted for Brother on August 1, 2024.

this action against Burnsed and Transamerica, claiming that the proceeds of the Policy were rightly theirs. Respondents argued that section 62-2-507(c),[3] which applies the presumed intent of a decedent to revoke a divorced spouse as a beneficiary of their life insurance policy, revoked Burnsed's status as primary beneficiary because Decedent and Burnsed divorced before Decedent's death. In Burnsed's place, they requested that Brother be named the primary beneficiary and Decedent's estate be named the contingent beneficiary of the Policy. In response, Burnsed filed an answer, counterclaim, and cross-claim denying that section 62-2-507(c) revoked her status as beneficiary and making several claims against Transamerica which are not at issue here.

At separate times during the lawsuit, both parties moved for summary judgment. Respondents filed their motion first, on April 20, 2018, arguing that section 62-2-507(c) revoked Burnsed's status as primary beneficiary as a matter of law. The circuit court denied Respondents' motion on August, 10, 2018, holding that the presumed intent codified in the statute did not apply retroactively under the facts of the case and that a constitutional question would likely be raised if it did. Burnsed later filed a motion for summary judgment on May 30, 2018, arguing that section 62-2-507(c) did not apply to a divorce occurring before the effective date of the statute. The circuit court granted Burnsed's motion on March 21, 2019, finding the legislature did not intend section 62-2-507(c) to "apply retroactively in the case of a divorce entered before the effective date of the statute."

Respondents appealed the circuit court's ruling to the court of appeals, which reversed. *Meier v. Burnsed*, 438 S.C. 362, 882 S.E.2d 863 (Ct. App. 2022). After reviewing opinions from other jurisdictions that have adopted the Uniform Probate Code (UPC) and have addressed similar questions about this provision, the court of appeals held that section 62-2-507(c) revoked Burnsed's designation as primary beneficiary because Decedent died after its effective date and Burnsed had no vested interest in the policy until Decedent's death. *Id.* at 379-91, 882 S.E.2d at 872-78.

---

[3] In 2013, the South Carolina Legislature amended section 62-2-507 to include life insurance policies as a type of "governing instrument" to which a presumption of intent to revoke a divorced spouse as a beneficiary would apply. Formerly, this presumption applied to more limited types of instruments. This amendment was part of the legislature's significant overhaul of the South Carolina Probate Code with Act Number 100 (the Act), which became effective on January 1, 2014. *See* Act No. 100, 2013 S.C. Acts 529.

Burnsed filed a petition for rehearing, which the court of appeals denied. This Court then granted Burnsed's Petition for a Writ of Certiorari to review the court of appeals' decision in this matter.

## STANDARD OF REVIEW

Appellate courts review summary judgment determinations from the same position as the circuit court. *Braden's Folly, LLC v. City of Folly Beach*, 439 S.C. 171, 190, 886 S.E.2d 674, 684 (2023). Summary judgment is appropriate only if the record before the circuit court demonstrates "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* at 190, 886 S.E.2d at 684 (quoting Rule 56(c), SCRCP). The interpretation of a statute is a question of law, which this Court reviews de novo. *S.C. Pub. Int. Found. v. Calhoun Cnty. Council*, 432 S.C. 492, 495, 854 S.E.2d 836, 837 (2021).

## LAW/ANALYSIS

Burnsed argues that the court of appeals erred when it held that section 62-2-507(c) revoked her as primary beneficiary of the Policy because the two were divorced before the Act's effective date in 2014. She contends that the presumption against retroactivity and the statute's text indicate the General Assembly intended it to be applied only prospectively. We disagree.

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Brooks v. Benore Logistics Sys., Inc.*, 442 S.C. 462, 477, 900 S.E.2d 436, 444 (2024) (quoting *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000)). The statute's text is the "best evidence of the legislative intent or will." *Hodges*, 341 S.C. at 85, 533 S.E.2d at 581 (quoting Norman J. Singer, *Sutherland Statutory Construc*tion § 46.03 at 94 (5th ed. 1992)). Thus, if a "statute's language is plain and unambiguous, and conveys a clear and definite meaning, the Court must give effect to that clearly expressed legislative intent and has no right to impose any other meaning." *Brooks*, 442 S.C. at 477, 900 S.E.2d at 444. Rather, the Court will give words their "plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation." *Connelly v. Main St. Am. Grp.*, 439 S.C. 81, 89, 886 S.E.2d 196, 200 (2023) (quoting *State v. Blackmon*, 304 S.C. 270, 273, 403 S.E.2d 660, 662 (1991)).

In ascertaining the legislature's intent, a Court should read a statute "in a sense which harmonizes with its subject matter and accords with its general purpose." *State v. Taylor*, 436 S.C. 28, 34, 870 S.E.2d 168, 171 (2022) (quoting *State v. Sweat*, 386 S.C. 339, 350, 688 S.E.2d 569, 575 (2010)). Thus, it "should consider the language

of the statute as a whole." *Taylor*, 436 S.C. at 34, 870 S.E.2d at 171 (quoting *Mid-State Auto Auction of Lexington, Inc. v. Altman*, 324 S.C. 65, 69, 476 S.E.2d 690, 692 (1996)). "[T]he Court may not, in order to give effect to particular words, virtually destroy the meaning of the entire context; that is, give the particular words a significance that would be clearly repugnant to the statute, looked at as a whole, and destructive of its obvious intent." *Buchanan v. S.C. Prop. and Cas. Ins. Guar. Ass'n*, 424 S.C. 542, 549-50, 819 S.E.2d 124, 128 (2018) (quoting *Crescent Mfg. v. Tax Comm'n*, 129 S.C. 480, 492, 124 S.E. 761, 765 (1924)).

Section 62-2-507 sets out the revocation upon divorce provision:

> Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce or annulment, the divorce or annulment of a marriage: (1) revokes any revocable: (i) disposition or appointment of property or beneficiary designation made by a divorced individual to the divorced individual's former spouse in a governing instrument . . . .

§ 62-2-507(c)(1)(i). The statute defines "governing instrument" as "an instrument executed by the divorced individual before the divorce . . . of the individual's marriage to the individual's former spouse including, but not limited to . . . life insurance beneficiary designations . . . ." § 62-2-507(a)(4). A "revocable" instrument is "one under which the divorced individual, at the time of the divorce . . . was alone empowered . . . to cancel the designation in favor" of their former spouse. § 62-2-507(a)(5).

In addition to setting January 1, 2014, as the date the Act became effective, the Act specifies that it applies to "any estate of decedents dying thereafter and to all trusts created before, on, or after its effective date." Act No. 100, § 4(B)(1), 2013 S.C. Acts 529, 1038.[4] Importantly, the Act further provides that, "any rule of construction or presumption provided in this act applies to governing instruments executed before the effective date of the act unless there is a clear indication of a contrary intent in the terms of the governing instrument." Act No. 100, § 4(B)(4), 2013 S.C. Acts 529, 1039. Section 62-2-507(c) is one such "presumption." As the Reporter's Comment clarifies, the statute "*effectuates a decedent's presumed intent*: without a contrary

---

[4] This portion of the statute was not codified, but can be found on the General Assembly's website at: https://www.scstatehouse.gov/Archives/aandjr.php.

indication by the decedent, a former spouse will not receive any probate or nonprobate transfer as a result of the decedent's death."  § 62-2-507 rep.'s cmt. (emphasis added).[5]

Under section 62-2-507(a)(4)'s definition of a governing instrument, a divorce must have occurred between the decedent and the beneficiary.  Thus, by providing that the presumption of revocation in section 62-2-507(c) applies to governing instruments executed before the effective date of the Act, the legislature clearly intended for the presumption to apply when the decedent's date of death is after the effective date of the Act, regardless of when a divorce occurs.[6]  Therefore the presumption applies: (1) when the decedent has named a spouse as their beneficiary, (2) the decedent and beneficiary spouse divorce, regardless of when the divorce occurs, and (3) the decedent's date of the death is after the effective date of the Act. This conclusion is supported by the statute's purpose, which is to "unify the law of probate and nonprobate transfers" and protect a decedent when the "failure to change his beneficiary probably resulted from 'inattention,' not 'intention.'"  *Sveen v. Melin*, 584 U.S. 811, 815 (2018) (quoting Uniform Probate Code § 2-804, Comment, at 333; Statement of the Joint Editorial Bd. for Uniform Probate Code, 17 Am. College Trust & Est. Counsel 184 (1991)); *see also* Catherine H. Kennedy, S. Alan Medlin, *2013 Amendments to the S.C. Probate Code*, S.C. Law., January 2014, at 32, 35 (explaining this as the impetus behind the expansion of the revocation upon divorce provision).

Prior to the Act, this Court held a divorce did "not of itself operate to defeat the beneficiary's claim," for life insurance proceeds of a former spouse because "if a policy is validly issued, then, in the absence of a contrary provision in the policy, *a contrary statute*, or a contrary insurance regulation, the rights of the beneficiary are not affected even though the beneficiary ceases to have an insurable interest in the life of the insured." *Duncan v. Invs. Diversified Servs., Inc.*, 285 S.C. 467, 470, 330 S.E.2d 295, 296 (1985) (emphasis added).  We reasoned that the revocation upon divorce statute then in effect only applied to wills as it was "very specific and [did] not disclose a legislative intent that divorce should nullify or revoke a beneficiary designation" in a life insurance policy. *Id.* at 472, 330 S.E.2d at 297.

---

[5] Importantly, the Reporter's Comment was incorporated into the text of the Act.  Act No. 100, § 62-2-507, 2013 S.C. Acts 529, 591.

[6] However, the Act is careful to note that "an act done and any right acquired or accrued before the effective date of the act is not affected by this act."  Act No. 100, § 4(B)(5), 2013 S.C. Acts 529, 1039.

However, the Act expressly includes life insurance beneficiary designations in the list of various governing documents that are presumptively revoked upon divorce. *See* § 62-2-507(c); § 62-2-507 rep.'s cmt. (noting the statute was amended in 2013 to "expand[] this section to cover life insurance . . . and other revocable dispositions"). Therefore, a "contrary statute" is now in place.

Here, three important facts have been established: (1) Decedent had a life insurance policy in which he designated Burnsed as the primary beneficiary before their divorce; (2) Decedent and Burnsed were divorced at the time of the Act's effective date in 2014; and (3) Decedent was empowered to change the beneficiaries of the policy any time before his death. Based on these facts, the life insurance policy in question is a revocable governing instrument under section 62-2-507. *See* § 62-2-507(a)(4) (defining "governing instrument" as an instrument executed by a decedent before their divorce, including life insurance beneficiary designations); § 62-2-507(a)(5) (defining "revocable" as having the power to cancel a designation in favor of the divorced spouse). Therefore, according to the plain language of the Act, our legislature clearly intended section 62-2-507(c)'s presumption of intent to revoke a former spouse to apply to the Policy and revoke Burnsed as the primary beneficiary.

Burnsed argues that such a revocation of her status would constitute a retroactive application of section 62-2-507(c). We disagree.

It is well-settled that "statutes are presumed to be prospective in effect." *Williams v. Jeffcoat*, 444 S.C. 224, 241, 906 S.E.2d 588, 597 (2024) (quoting *State v. Isaac*, 405 S.C. 177, 186, 747 S.E.2d 677, 681 (2013)). Thus, "[a] statute is not to be applied retroactively unless that result is so clearly compelled as to leave no room for doubt." *Williams*, 444 S.C. at 241, 906 S.E.2d at 597 (quoting *Isaac*, 405 S.C. at 186, 747 S.E.2d at 681). A statute is retroactive "if its application determines the legal significance of acts or events that occurred prior to the statute's effective date." *Harleysville Mut. Ins. v. State*, 401 S.C. 15, 32, 736 S.E.2d 651, 660 (2012) (Beatty, J., concurring in part) (quoting 16B Am. Jur. 2d *Constitutional Law* § 735 (2009)). In addition, "statutes and ordinances enacted subsequent to the execution of a contract, which add burdens or impair the obligations of the contract, may not be deemed to be a part of the agreement unless the language of the agreement clearly indicates this to have been the intention of the parties." *Catawba Indian Tribe of S.C. v. State*, 372 S.C. 519, 529, 642 S.E.2d 751, 756 (2007) (quoting 17A Am.Jur.2d Contracts § 372 (2004)).

The Act did not reach back into time to change the terms of Decedent's policy. As a practical matter, where the policyholder retains the right to change the

beneficiaries, the policy's beneficiaries are determined at the policyholder's death, as certain lifetime events may alter which beneficiary will receive the policy's proceeds. *See Davis v. S. Life Ins.*, 249 S.C. 194, 199, 153 S.E.2d 399, 401 (1967) (noting that vesting of a life insurance beneficiary's interest occurs upon the insured's death); 46A C.J.S. *Insurance* § 1966 (2018) ("The relevant date for ascertaining the parties' rights to the proceeds [of a life insurance policy] is the date of the insured's death."). As discussed above, the beneficiary designations in the Policy were revocable because Decedent was empowered to change the beneficiary at any point up until his death. *See Horne v. Gulf Life Ins.*, 277 S.C. 336, 338, 287 S.E.2d 144, 146 (1982) (holding that "[w]here the insured has reserved the right in his policy to change the beneficiary, . . . the complete control of the policy remains in the insured" during his lifetime). Due to the revocability of this provision, Burnsed did not have a vested right in the Policy when the Act became effective in 2014. *See Horne*, 277 S.C. at 338, 287 S.E.2d at 146 (holding that a beneficiary of a revocable policy "does not have a vested right during the insured's lifetime," but a "mere expectancy"); *Davis*, 249 S.C. at 199, 153 S.E.2d at 401 (stating that it is only "[u]pon the death of the insured [that] the rights of the beneficiary become vested").

Decedent had the right to change the primary beneficiary designation at the time the Act became effective in 2014. Thus, when the Act became effective, it applied to the Policy contemporaneously to effectuate Decedent's present presumptive intention that his former wife would not be the beneficiary of the Policy. *See* § 62-2-507 rep.'s cmt. (explaining the statute "effectuates a decedent's presumed intent"). Therefore, the statute did not apply retroactively to the date of the divorce, but prospectively upon the Act's effective date.

In sum, under the Act, the Policy was still effective to pay the contracted-for benefits to Decedent's beneficiaries and the beneficiaries remained revocable. *See also Sveen*, 584 U.S. at 819 (holding that this UPC provision does not substantially impair the contractual provisions of a life insurance policy in part because "the statute is designed to reflect a policyholder's intent – and so to support, rather than impair, the contractual scheme.").[7] Consequently, based on the plain language of the statute,

---

[7] Additionally, as a mere default rule setting a presumption of intent, it could have easily been rebutted with the showing of clear evidence of a contrary intent. *See* Act No. 100, § 4(B)(4), 2013 S.C. Acts 529, 1039. Decedent was presumed to know the law. *See Kemp v. Rawlings*, 358 S.C. 28, 35, 594 S.E.2d 845, 849 (2004) ("[E]veryone is presumed to have knowledge of the law."). If he had a contrary intent, he simply could have filed minimal paperwork with the insurance company after the passage of the Act to retain Burnsed as the primary beneficiary.

Burnsed's designation as a beneficiary was revoked the day the Act became effective. *See* § 62-2-507(c).[8]

Based on this ruling, there is no need to reach the question of whether a retroactive application of section 62-2-507(c) would violate the Contracts Clause of either the United States or South Carolina Constitution.[9]

**CONCLUSION**

We **AFFIRM as modified herein** the court of appeals' ruling that Burnsed's designation as primary beneficiary of Decedent's life insurance policy was revoked under section 62-2-507(c) of the South Carolina Probate Code.

Accordingly, the order of the court of appeals is

**AFFIRMED AS MODIFIED.**

**KITTREDGE, C.J., FEW and JAMES, JJ., concur. HILL, J., dissenting in a separate opinion.**

---

[8] Burnsed argues the use of present tense in section 62-2-507(c) indicates the legislature intended for the amended statute to apply to the future but not to apply retroactively. *See* S.C. Code Ann. § 2-7-30 (Supp. 2024) ("And all words importing the present tense shall apply to the future also."). Because we hold the Act did not apply retroactively, we do not need to address this argument. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not address remaining issues when its resolution of a prior issue is dispositive).

[9] *See Am. Nat'l Fire Ins. v. Smith Grading & Paving, Inc.*, 317 S.C. 445, 448 n.2, 454 S.E.2d 897, 899 n.2 (1995) (holding that because a statute did not apply retroactively, there was no violation of the Contracts Clause).

**JUSTICE HILL, dissenting:**

The majority's well-written opinion is in line with the result reached by several other courts. Although I cannot agree with the result the majority reaches, I suspect we all agree that deciding whether a statute is retroactive—and, if so, whether the legislature intended it to be so—is not easy. It requires courts to navigate waters notorious for contrary currents, guided by methods incapable of reliable precision. 2 Sutherland Statutory Construction § 41.2 (8th ed. Nov. 2024 Update) (recognizing "the difficult task courts often face" in deciding whether a statute is retroactive); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994) ("Any test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity."); Jill E. Fisch, *Retroactivity and Legal Change: An Equilibrium Approach*, 110 Harv. L. Rev. 1055, 1072 (1997) ("[F]ormulating a precise definition of retroactivity is a difficult enterprise[.]").

A serviceable definition of retroactivity explains a statute operates retroactively if it "attaches new legal consequences to events completed before its enactment." *Landgraf*, 511 U.S. at 270. *Landgraf* reaffirmed Justice Story's definition that a statute is retroactive if it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Id.* at 269 (quoting *Soc'y for the Propagation of the Gospel v. Wheeler et. al.*, 22 F.Cas. 756, 767 (No. 13,156) (CCNH 1814)). It is settled that statutes may be considered as retroactive even when they do not strip vested rights, so long as they alter the legal effect of past acts. *See id.* at 269, 275 n.29.

In my view, the legislature did not intend for § 62-2-507 of the South Carolina Code (2022), to be applied retroactively under the circumstances here.

My friends in the majority conclude that revoking Meier's designation of Burnsed as the beneficiary does not constitute a retroactive application of § 62-2-507. The majority reasons the statute only applied to revoke the designation "on the date of the Act's effective date." Nothing in the language of the statute convinces me the legislature intended for the legal consequences of § 62-2-507 to apply to divorces obtained before January 1, 2014, the statute's effective date. Yet, that is the result of the majority opinion.

In my view, the first step in deciding whether a statute operates retroactively is identifying the specific conduct the statute affects. If that conduct occurred after the statute became law, then there is no retroactive application. As Justice Scalia once

put it, the reference point for retroactivity is the conduct or "activity the statute was intended to regulate." *Martin v. Hadix*, 527 U.S. 343, 363 (1999) (Scalia, J., concurring in part). As he elaborated in a later opinion:

> For any given regulated party, the reference point (or "retroactivity event") is the moment at which the party does what the statute forbids or fails to do what it requires. With an identified reference point, the retroactivity analysis is simple. If a person has engaged in the primary regulated activity *before* the statute's effective date, then the statute's application *would* be retroactive. But if a person engages in the primary regulated activity *after* the statute's effective date, then the statute's application is prospective only. In the latter case, the interpretive presumption against retroactivity does not bar the statute's application.

*Vartelas v. Holder*, 566 U.S. 257, 277 (2012) (Scalia, J., dissenting) (citations omitted).

The reference point for applying § 62-2-507 is the date of the divorce. There is no question § 62-2-507 regulates an insurance policy owner's conduct by canceling out his previously stated intent that his (now ex) spouse be the sole beneficiary of the policy proceeds. This cancellation occurs at the moment of the divorce.

Having fixed the reference point, the next step is to decide whether the legislature intended for the statute to apply to that past conduct. The legislature may, subject to constitutional constraints, declare that a statute operates retroactively. But the legislature must express that intent by using specific and unequivocal language. This means the words used can bear only one reasonable interpretation. *United States v. Heth*, 7 U.S. 399, 413 (1806) ("Words in a statute ought not to have a retrospective operation, unless they are so clear, strong, and imperative, that no other meaning can be annexed to them, or unless the intention of the legislature cannot be otherwise satisfied."). If it has declared that intent in clear, unmistakable language, our statutory interpretation journey is over. *Kirven v. Cent. States Health & Life Co., of Omaha*, 409 S.C. 30, 39, 760 S.E.2d 794, 799 (2014) (where legislature expressly provides statute's temporal reach extends to conduct at issue, there is no need to consider presumption against retroactivity).

Because in my view the legislature did not state in clear and unmistakable language that § 62-2-507 applies to divorces finalized before its effective date, ambiguity

lurks. Where there is ambiguity, there can be no retroactivity. Because it is not clear beyond a reasonable doubt that the legislature intended the statute to reach back in time and apply to the past divorce reference point, a court must honor the ancient presumption that the statute was intended to only apply prospectively.

This insistence on unmistakable clarity allows courts to avoid guessing whether the legislature decided that the benefits of retroactive application outweighed the costs such an application exerts on those affected. These costs include fairness, reliance, and the peace of repose. It would have been easy for our able legislature to have used such direct language here. All it had to say was the statute "applies to governing instruments executed and divorces obtained before its effective date."

The majority is right that the language of the Act that became § 62-2-507 states it "applies to governing instruments executed before the effective date of this act." This just proves that a beneficiary designation executed before § 62-2-507's effective date can be revoked by a divorce that occurs *after* its effective date. Again, the triggering event of § 62-2-507 is the divorce. That is the date § 62-2-507 revokes any existing beneficiary designation of an ex-spouse. As noted, had the legislature intended for § 62-2-507 to apply to divorces obtained "before the effective date" of § 62-2-507, it had the perfect opportunity to express that intent in simple, direct language.

As the majority acknowledges, the Act states that it does not affect "an act done and any right acquired or accrued" before the effective date. This is important. I agree with the majority that Burnsed had no vested or accrued right to be the beneficiary. Still, applying § 62-2-507 to revoke Meier's beneficiary choice would affect the legal consequences of "an act done" before January 1, 2014. Make that two acts: Meier's 1998 act of designating his beneficiary and the parties' act of divorcing in 2002.

Presumptions crowd this case. It is true, as the majority points out, that Meier was presumed to know the law. Presumably, he also knew about the presumption against the retroactivity of laws. He was presumed to know the extent of his property and the scope of his estate. Meier was presumed to know the law as it existed when he divorced, and—if he no longer intended Burnsed to be the beneficiary—it may also be presumed he would have carried out his presumed intent by changing the beneficiary designation. He did not. For fifteen years after the divorce, he left it alone. He continued to pay the premiums. All the while, the record suggests he maintained a platonic but loving relationship with Burnsed. Yet, now these talismans of his actual, lived intent are to be swept aside so the cancelling hand of a later enacted law can "effectuate" his "presumed intent."

The presumption we should focus on is not the legal fiction of presumed intent manufactured by the drafters of the Uniform Probate Code. It is the one that "is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Landgraf*, 511 U.S. at 265. It is the presumption that statutes are meant to be applied prospectively "unless there is a specific provision or clear legislative intent to the contrary." *Hyder v. Jones*, 271 S.C. 85, 88, 245 S.E.2d 123, 125 (1978). "No statue will be applied retroactively unless that result is so clearly compelled as to leave no room for reasonable doubt." *Id*. The presumption against retroactivity serves fundamental interests of justice by allowing parties to know what the law is before they act, so they "may rest assured after they act that their lawful conduct cannot be second-guessed later." *Opati v. Republic of Sudan*, 590 U.S. 418, 425 (2020); *see also* The Federalist No. 44, at 282 (J. Madison) (Clinton Rossiter ed., 1961) (noting that certain retroactive laws, such as bills of attainder, ex post facto laws, and laws that impair contracts "are contrary to the first principles of the social compact, and to every principle of sound legislation").

Retroactivity disputes entangle courts because they occur at the convergence of three powerful strands in the law, all pulling in different directions: (1) that courts should apply the law in effect at the time of decision, (2) that courts should presume statutes are prospective only, and (3) the law, like time, moves on and moves forward but sometimes must be applied to solve puzzles from the past. While I reach a result different than my fine colleagues in the majority, like them, I appreciate that there may be more than one way to untangle the knot these strands have tied in this case.